UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CLIFTON JETT TRANSPORT, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:21-cv-01064-JPH-DLP |
| ) | |
| BARRETTE OUTDOOR LIVING, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |
| BARRETTE OUTDOOR LIVING, INC., ) | |
| ) | |
| Counter Claimant, ) | |
| ) | |
| v. ) | |
| ) | |
| CLIFTON JETT TRANSPORT, INC., ) | |
| ) | |
| Counter Defendant. ) | |

### ORDER

This matter is before the Court on the Motion to Hold Plaintiff in Contempt ("Motion for Contempt"), (Dkt. 72), of Defendant/Counter Claimant Barrette Outdoor Living, Inc. ("Barrette"). For the reasons set forth below, the Motion for Contempt is **GRANTED IN PART AND DENIED IN PART**.

**I.   Background**

On or about March 22, 2021, Plaintiff/Counter Defendant Clifton Jett Transport, Inc. ("CJT") filed a Complaint in Marion County, Indiana, Superior Court, alleging that Barrette had breached the parties' Transportation Agreement.

(Dkt. 1-1 at 2). CJT sought the *pro rata* amount it claimed it was due under the contract. (*Id.* at 6, ¶ 23). Barrette removed the case to this Court, answered, and counterclaimed, asserting that CJT had breached the contract. (Dkt. 1; Dkt. 14).

According to the Complaint, on or about June 2, 2019, CJT and Barrette entered into a three-year contract for transportation services in the Greater Indianapolis Area. (Dkt. 1-1 at 4-5, ¶¶ 5-6, 15). The contract contained a liquidated damages clause, requiring Barrette to pay the *pro rata* remainder of the contract value if it breached without cause. (*Id.* at 5, ¶ 17). In July 2020, Barrette informed CJT that it was closing its Indianapolis facility and, thus, was terminating the agreement. (*Id.* at 5, ¶ 8).

Discovery commenced thereafter, and Barrette propounded the following interrogatory:

> Describe specifically and in detail all steps Plaintiff has taken in an effort to mitigate any of the damages that Plaintiff claims to have sustained as a result of any act or omission by or on behalf of Defendant.

(Dkt. 73-1 at 11). In response, CJT's representative, Clifton Jett ("Jett") stated "that [CJT] has performed work for AMAZON beginning in November 2020." (*Id.* at 11, 13 (emphasis in original)). Barrette found the response to be insufficient because CJT failed to provide information regarding: contract formation between CJT and Amazon and the contract's provisions; the scope and nature of the work performed for Amazon; or CJT's earnings and profits as a result of its work for Amazon. (Dkt. 74 at 3). Barrette noticed a deposition of CJT under Rule 30(b)(6) of the Federal Rules of Civil Procedure and asked that, as part of the deposition, CJT

produce all documents relating to: (1) claimed damages; (2) efforts at mitigation, including work performed for Amazon; and (3) work performed for other shippers since January 2, 2019. (*Id.*, quoting Dkt. 73-2 at 6, ¶¶ 5-7). Despite the document requests, CJT's Rule 30(b)(6) representatives, Jett and Gwenetta Lewis-Jett ("Lewis-Jett"), did not bring any documents responsive to the first and second topics. (*Id.* at 3-4). Rather, Jett and Lewis-Jett testified that they had provided CJT's counsel with documents relating to its work for Amazon. Further, Jett testified that: Amazon had sent him statements regarding income earned from Amazon; he had access to those statements; but he had not provided copies of those statements to counsel. (*Id.* at 5, citing Dkt. 73-3 at 6; Dkt. 73-4 at 6; Dkt. 73-5 at 5; Dkt. 73-6 at 5).

Following the deposition, Barrette "served a nonparty request on Amazon[.]" (Dkt. 74 at 5). Following a conference on May 11, 2022, with Magistrate Judge Mario Garcia of the United States District Court for the Southern District of Indiana, the Court issued an Order requiring CJT to produce documents relating to CJT's alleged damages and work for Amazon. (*Id.*, quoting Dkt. 53 at 2). On June 24, 2022, CJT's counsel sent an email to Barrette's counsel stating that counsel was in possession of certain records regarding CJT's relationship with Amazon. CJT's counsel further indicated that it could not produce those documents without Amazon assenting to disclosure. (Dkt. 74 at 6, quoting Dkt. 73-7 at 2). In addition, to expedite the process of Amazon assenting to the release, CJT's counsel asked Barrette's counsel to provide him with Barrette's point of contact for its subpoena of

3

Amazon. (Dkt. 73-7 at 2). On July 11, 2022, Barrette's counsel responded, informing CJT's counsel that he would not provide the requested point of contact information. (Dkt. 84 at 12-13).

On July 14, 2022, the parties had a discovery conference before Judge Garcia (Dkt. 63). Following that proceeding, on July 19, 2022, the Court ordered CJT to produce, within seven days, the following:

1. Documents showing CJT's revenues, expenses, and profits in 2019, 2020, 2021, and early 2022;
2. Documents and other records relating to lost revenue or other damages suffered by CJT; and
3. Documents relating to CJT's subsequent work for Amazon.

(Dkt. 64 at 3). The Court's Order stated that CJT was obligated to produce the documents irrespective of any confidentiality agreement it may have with Amazon. (*Id*. at 2-3). On July 22, 2022, CJT moved for an additional fourteen days to produce the documents. (Dkt. 65). Barrette opposed the motion and requested that CJT be sanctioned and be required to reimburse Barrette's attorney fees and costs, and, further, that CJT's complaint be dismissed with prejudice if CJT and its counsel continued to refuse to comply with the Court's Orders (Dkt. 68 at 5, ¶¶ 13-14.).

On August 1, 2022, while the request for an extension was still pending before the Court, CJT received authorization from Amazon to produce documents, and, that same day, CJT released forty-six pages of documents to Barrette. (Dkt. 74 at 8-9). On August 8, 2022, the Court granted CJT's motion for extension of time, giving CJT until August 9, 2022, to produce the documents specified in the Court's July 19,

4

2022 Order. (Dkt. 71 at 1-2). On August 23, 2022, Barrette, concluding that CJT "ha[d] not produced a single document showing how much money it earned from its alleged work for Amazon in 2021 or 2022 and ha[d] not produced sufficient documents for Barrette to determine how much money CJT expensed, earned, and profited from its Amazon work in 2020," field the present Motion for Contempt. (Dkts. 72; 74 at 1-2). CJT responded on September 6, 2022. (Dkt. 84). Barrette's reply was filed with the Court on September 13, 2022. (Dkt. 90).

## II. Legal Standards

A district court may hold a party in civil contempt as part of its inherent authority to enforce its orders. *Ott v. City of Milwaukee*, 682 F.3d 552, 555 (7th Cir. 2012), quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966). Sanctions may be both coercive (to induce compliance in the future) and compensatory (to make the non-offending party whole for its time and effort expended due to the offending party's noncompliance). *Bailey v. Roob*, 567 F.3d 930, 933 (7th Cir. 2009); citing *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 738 (7th Cir. 1999). For the Court to find a party in contempt:

> [T]he moving party must establish by clear and convincing evidence that (1) a court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply.

*United States Sec. & Exch. Comm'n v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010).

### III. Discussion

#### A. Motion for Contempt

Here, Barrette argues that CJT's repeated refusal to produce the Court-ordered documents have subjected Barrette to significant time and expense and left it unable to defend itself, and thus the Court should find CJT in contempt. (Dkt. 74). In response, CJT contends that, through its document production, it has substantially complied with the Court's Orders. (Dkt. 84). The Court will address the *Hyatt* elements in turn.

##### 1. Unambiguous Command

CJT does not claim that the Court's Orders on July 19, 2022, and August 8, 2022, are anything but unambiguous commands to CJT to produce, no later than August 9, 2022 (Dkt. 71 at 2), documents relating to: CJT's revenues, expenses, and profits from 2019 through early 2022; its lost revenue or other damages; and its work for Amazon. (Dkt. 64 at 3). Nor could it reasonably do so. Further, the Court was clear in its statement that: "[t]he existence of a contractual obligation for CJT to seek Amazon's permission before releasing any documents does not preclude this Court from issuing an order requiring CJT to produce these otherwise admissible documents." (*Id.* at 2-3). Thus, the first *Hyatt* element is met.

##### 2. Violation of the Command

Next, Barrette argues that CJT provided no records until Amazon gave permission, despite the Court's Order, and the documents produced were neither compliant with the Order nor responsive to Barrette's requests. (Dkt. 74 at 11). CJT responds that since August 1, 2022:

6

> CJT has produced (1) documents showing CJT's revenues, expenses, and profits in 2019 and 2020, e.g. [JETT02254, 2260]; (2) documents and other records relating to lost revenue or other damages suffered by CJT; and (3) documents relating to CJT's subsequent work for AMAZON. [JETT02254, 02252-2307]. CJT has further provided sworn testimony about its finances through 2021 and committed to produce its responsive 2021 and 2022 tax documents upon their completion.

(Dkt. 84 at 18 (emphasis in original), citing Dkt. 85-9 at 2-18). To support this argument, CJT cites to Jett's individual deposition, in which Jett provided no information about CJT's finances except for remarks that it received between $30,000 and $40,000 from Amazon in 2020 and between $400,000 and $500,000 from Amazon in 2021. (Dkt. 85-9 at 2-3, 3-4). However, these figures are contradicted by Amazon's records, which show that Amazon paid almost $1,500,000 to CJT between July 31, 2021, and January 29, 2022, alone. (Dkt. 89-5 at 2-3). Further, CJT fails to identify which exhibits contain JETT02252-2307, and "a district court . . . is not required to scour the party's various submissions to piece together appropriate arguments." *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995). CJT has failed to direct the Court to any documents it produced that relate to lost revenue or other damages.[1] CJT did not produce invoices submitted to Amazon. Nor did CJT produce documents relating to: the amounts CJT billed Amazon; when and if payments from Amazon were received by CJT; or the existence of a formal contract between Amazon and CJT. Moreover, CJT produced no evidence of its expenses or profits for the years in question as it relates to work for Amazon.

---

[1] The Court notes that Barrette did submit JETT02282-2303 (Dkt. 73-8), which appear to be records that CJT submitted invoices to Amazon for particular weeks.

The Court is only left with Jett's contradicted deposition testimony. It somewhat strains credulity that CJT, which grosses approximately $50,000 per week (Dkt. 89-5 at 2-3), does not maintain even a basic balance sheet. (Dkt. 85-9 at 5). Yet, even if the Court were to accept Jett's testimony as true, the deficiencies in the production compel the conclusion that CJT violated Judge Garcia's Orders.

### 3. Significant Violation

CJT argues that its post-August 1, 2022, production constitutes substantial compliance with Judge Garcia's July 2022 Order. (Dkt. 84 at 18, citing Dkt. 64). Further, even though CJT has not produced documents for 2021 and 2022, it has produced tax forms and a check from Peerless from 2020, which will enable Barrette to calculate CJT's revenues. (*Id.* at 19). The Court disagrees. The deficiencies in CJT's production, discussed above, mean that it has failed to comply substantially with the goal of the Order: to allow Barrette to ascertain the extent to which CJT's alleged losses are subject to set-off. Thus, CJT's violations of the Court's Orders are significant.

### 4. Reasonable and Diligent Effort

CJT argues that it worked diligently to obtain the documents requested, repeatedly seeking to secure Amazon's assent to the release of documents, even as Barrette refused to cooperate. (Dkt. 84 at 19-20, citing Dkt. 64, Dkt. 85-18, Dkt. 85-19, Dkt. 85-20, Dkt. 85-23; Dkt. 85-25). Further, and contrary to Barrette's assertions, CJT maintains that many of the documents sought simply do not exist. (Dkt. 84 at 21). Even if CJT is being truthful, Amazon's response to the subpoena shows a much more formal and remunerative relationship between CJT and

Amazon than CJT's production suggested. Further, the Court has already rejected CJT's argument that its agreement with Amazon forbade production of the documents absent Amazon's assent. (Dkt. 64 at 2-3). CJT has not explained why it continued to delay production of those documents in light of the Court's July 22 Order. Consequently, even if CJT's violation of the Order was not willful, the Court cannot conclude that CJT undertook a reasonable and diligent effort to comply with the Orders. Thus, all four elements of *Hyatt* have been met by clear and convincing evidence, and CJT should be held in contempt.

### B. Appropriate Sanction

"Courts have broad discretion to fashion contempt remedies and the particular remedy chosen should be 'based on the nature of the harm and the probable effect of alternative sanctions.'" *Fed. Trade Comm'n v. Trudeau*, 579 F.3d 754, 771 (7th Cir. 2009), quoting *Connolly v. J.T. Ventures*, 851 F.2d 930, 933 (7th Cir. 1988). Barrette seeks to have CJT's complaint dismissed with prejudice and to hold CJT and its counsel jointly and severally liable for its costs and attorney fees expended in its attempts to obtain compliance by CJT. (Dkt. 74 at 14-15).

> A dismissal with prejudice is a harsh sanction which should usually be employed only in extreme situations, when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailing. . . . The sanction of dismissal is the most severe sanction that a court may apply, and its use must be tempered by a *careful* exercise of judicial discretion.

*Owen v. Wangerin*, 985 F.2d 312, 317 (7th Cir. 1993), quoting *Webber v. Eye Corp.*, 721 F.2d 1067, 1069 (7th Cir. 1983) (emphasis in original) (internal quotation marks and citation omitted). CJT's noncompliance with the Court's Order appears

9

to be a result of negligence on the part of Jett and Lewis-Jett, rather than willful disobedience. Further, it is not clear that a lesser sanction will not suffice. Barrette claims CJT's failure to produce documents means it is impossible for Barrette to defend itself and its affirmative defense of set-off. (Dkt. 74 at 14-15 (citations omitted)). Yet, this case turns not on the amount of damages, but rather the issues of breach and whether a liquidated damages clause is subject to set-off. If Barrette is found to have breached and liquidated damages are not subject to set-off, then Barrette is liable for as much as $370,003.26. (Dkt. 84 at 4, quoting Dkt. 85-1 at 2, ¶ 9). If liquidated damages are subject to set-off, Jett testified that CJT received no less than $430,000 from Amazon in 2020 and 2021 (Dkt. 85-9 at 2-3, 3-4). Thus, as CJT concedes (Dkt. 84 at 20), its damages would be $0 even if Barrette is found to have breached. The above does not justify the extreme sanction of dismissal.

Nonetheless, the Court is mindful of the time and expense undertaken by Barrette in attempting to obtain these documents. Barrette argues that its expenses "include[] attorneys' fees and costs related to serving discovery requests, conducting follow-up discovery, participating in telephonic discovery conferences, taking an agreed-upon Rule 30(b)(6) deposition, and preparing and prosecuting this motion for contempt." (Dkt. 74 at 15). The Court agrees that all such categories are compensable. Barrette shall submit within thirty days of this Order a detailed calculation of reasonable costs and attorney fees incurred.

Barrette's request to hold CJT and its attorneys jointly and severally liable (Dkt. 74 at 15), however, is not well-taken. Barrette argues that both the Rule

30(b)(6) deposition and CJT's counsel's emails showed that counsel was in possession of Amazon payment records that were fully responsive to the inquiry, but counsel failed to produce them. (*Id.* at 15-16, quoting Dkt. 73-7 at 2). This failure to produce, Barrette asserts, means counsel may be held liable. (*Id.* at 16, quoting *Novelty, Inc. v. Mountain View Mktg., Inc.*, No. 1:07-cv-01229-SEB-JMS, 2010 WL 1490416, at *1, *3 (S.D. Ind. Apr. 12, 2010)). The Court disagrees. As CJT notes, Jett testified that he had not provided earning statements to counsel, and Lewis-Jett testified that there were no unproduced documents regarding how much CJT earned from Amazon. (Dkt. 85-27 at 1-2, quoting Dkt. 73-5 at 5, Dkt. 73-6 at 5). Further, counsel was diligent in attempting to obtain Amazon's assent to release the documents in counsel's possession, and released the documents almost immediately after obtaining that assent. (Dkt. 85-22; Dkt. 85-23). Thus, this appears to be a failure by the *party*, rather than *counsel*, to comply. While Barrette insinuates that CJT's attorneys have not disclosed all relevant documents (Dkt. 74 at 15-16), the Court relies on counsel's Rule 11(b) obligation and ongoing duty of candor to the Court to conclude that, at this time, no such documents have been withheld by counsel. Consequently, joint and several liability is not appropriate.[2]

IV. Conclusion

For the foregoing reasons, Barrette's Motion for Contempt (Dkt. 72) is **GRANTED IN PART AND DENIED IN PART**. Barrette shall submit, within thirty days of this Order, a detailed and verified itemization of costs and attorney

---

[2] If, however, it is revealed that documents have been withheld by counsel, then counsel will be subject to serious sanction. FED.R.CIV.P. 11(c)(1).

fees incurred. Any further briefing on the matter shall proceed in accordance with

S.D. Ind. L.R. 7-1(c)(3).

    So ORDERED.

        Date: 12/7/2022

Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email