# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

|  |  |
|---|---|
| **Clifton Jett Transport, Inc.**, | |
| Plaintiff / Counterclaim Defendant, | |
| v. | Cause No. 1:21-cv-01064-JPH-MKK |
| **Barrette Outdoor Living, Inc.**, | |
| Defendant / Counterclaim Plaintiff. | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S FEE PETITION

Because *Defendant's Detailed and Verified Itemization of Costs* ("*Fee Petition*")
[Dkt. 169] is excessive – as it relates to the work performed, the needs of the case, and
scope of the *Order on Cross Motions for Sanctions* [Dkt. 72] – the Court should reduce
Defendant Barrette Outdoor Living, Inc.'s attorney fee request from $182,856.40 to
$36,857.97. This award represents a reasonable hour-per page rate for briefing on Dkts.
72, 114, and 127 and fees equal to six times those incurred in traveling to and attending
the June 7, 2023 hearing on the parties' cross-motions for contempt. It excludes
excessive, unrelated, or otherwise required litigation work, as well as Barrette's fees-on-
fees for pursuing its unreasonable request.

1

## I.      INTRODUCTION

In April 2022, months before the *Discovery Conference Order* [Dkt. 64] was issued,

Amazon voluntarily offered to provide Barrette with CJT's revenue information that

formed the principal basis of *Defendant's Motion to Hold Plaintiff in Contempt* [Dkt. 72].

And though countless hours have since been spent by the parties and the Court on this

issue, Barrette's damages and mitigation analysis ultimately relied on CJT's tax

documents that were created months after that motion was filed. *See generally*

[Dkt. 151 at 28-29]. These efforts have only served to confirm the key fact to which CJT

testified in March 2022 – it earned more from Amazon in 2021 than the roughly $360,000

in contract damages it is seeking from Barrette in this lawsuit.

Barrette's request for an award of more than $180,000 is grossly disproportionate

to the role of these documents in this case. Barrette has billed an excessive amount of

time litigating Dkts. 72, 114, and 127, especially after accounting for its recycled

material. More than half of its claimed fees are related to other aspects of this case or

would have been incurred by Barrette regardless of CJT's compliance with the Court's

orders.

In responding to this *Fee Petition*, CJT asks only that the Court examine it fairly

and critically; that it award Barrette only those fees that are fairly traceable to the

conduct it has sanctioned. The Court should not shift Barrette's general litigation

expenses to CJT. And it should not compensate Barrette beyond those expenses it

reasonably incurred, nor reward it for failing to reasonably parse its entries before

submitting them to the Court.

## II.   PROCEDURAL BACKGROUND

In its July 12, 2023 *Order on Cross Motions for Sanctions*, the Court granted *Defendant's Motion to Hold Plaintiff in Contempt* [Dkt. 72], denied *Plaintiff's Motion for Contempt Order* [Dkt. 127], and issued "an award of attorney's fees and costs to Barrette for the reasonable fees and expenses associated with litigating its motion for contempt, dkt. 72, responding to CJT's objection, dkt. 114, and defending against CJT's motion for contempt, dkt. 127, through final resolution of the fee award." [Dkt. 155 at 1, 21].

Following the entry of that *Order* [Dkt. 155], the Court convened a settlement conference on August 9, 2023. [Dkt. 164]. Despite the good faith efforts of the parties and counsel, an agreement was not reached either as to the Court's sanctions or the case as a whole. [Dkt. 166]. Accordingly, Barrette submitted *Defendant's Detailed and Verified Itemization of Costs* ("*Fee Petition*") [Dkt. 169] on August 25, 2023, seeking "$182,856.40 in attorneys' fees and costs Barrette has incurred and will likely incur in litigating its motion for contempt, responding to CJT's objection, and defending against CJT's motion for contempt through the final resolution of the fee award." [Dkt. 169 at 4].

## III.   FACTUAL BACKGROUND

### A. The parties are suing one another for breach of the *Agreement for Transportation Service.*

On January 2, 2019, the parties entered into a 3-year *Agreement for Transportation Service* ("Agreement"), running through January 2, 2022. [Dkt. 140-1]. Barrette terminated the Agreement early (in or around August 2020), triggering an obligation "to pay the pro rata remaining value of the term of the agreement to CARRIER." [Dkt. 140-1 at 2 § 9]. CJT's claimed damages are $362,525.46. *See* [Dkt. 142 at 19]

3

(requesting an award of liquidated damages). When Barrette refused to pay CJT for its breach of the contract, CJT filed this lawsuit in Marion Superior Court on March 23, 2021. *See generally* [Dkt. 1-1].

Barrette removed the case to federal court on April 29, 2021, see [Dkt. 1], and filed its *Answer to Complaint and Counterclaim* on May 24, 2021. [Dkt. 14]. In its *Answer*, Barrette counterclaimed against CJT for "refusing to accept shipments to/from Barrette's locations outside of Indianapolis." [Dkt. 14 at 8 ¶ 19]. Barrette's claimed damages are $97,763. *See* [Dkt. 151] (explaining its damages analysis. Barrette did not plead an affirmative defense relating to mitigation of damages. *See* [Dkt. 14 at 5-6] (Barrette's affirmative defenses. *See also* [Dkt. 96] (belatedly seeking to amend its *Answer* to add mitigation of damages).

## B. Barrette's mitigation discovery was limited to a single interrogatory.

When Barrette served its initial written discovery requests on CJT on August 31, 2021, it included a single interrogatory relating to damages mitigation: "Describe specifically and in detail all steps Plaintiff has taken in an effort to mitigate any of the damages that Plaintiff claims to have sustained as a result of any act or omission by or on behalf of Defendant." [Dkt. 101-2 at 9]. CJT timely objected to this interrogatory and stated that "it has performed work for Amazon beginning in November 2020." [Dkt. 73-1 at 11]. Following a request for supplementation, CJT further stated on February 11, 2022, that "Plaintiff immediately began seeking other contracts. In November of 2020, Plaintiff began working for Amazon Logistics."

[Dkt. 101-5 at 3]. CJT further produced a copy of its 2020 *Schedule C* on March 2, 2022, and agreed to provide its 2021 *Schedule C* upon filing.

### C. Barrette took CJT's deposition in March 2022.

Barrette initially noticed CJT's deposition under Rule 30(b)(6) on February 10, 2022. (Ex. 1.) This notice included topics relating to CJT's mitigation efforts. (Ex. 1 at 4.) It also included seven new categories of document requests. (Ex. 1 at 5-6.) CJT timely objected to these topics and document requests. [Dkt. 101-8 at 1, 4]. Each of Barrette's subsequent Rule 30(b)(6) deposition notices – including those after the *Discovery Conference Order* [Dkt. 64] was issued – have been identical in scope. (Ex. 2) (2/22/22 notice); (Ex. 3) (9/9/22 notice); (Ex. 4) (3/6/23 notice)

Barrette took CJT's deposition on March 3 and 4, 2022, subject to CJT's objections. During those depositions, Barrette elicited testimony about CJT's mitigation efforts. (Jett Dep. at 84:19 to 99:3) [Dkt. 101-9 at 2-17]. This included CJT's estimate that it had received between $400,000 and $500,000 in revenues from Amazon in 2021. (Jett Dep. at 84:22 to 85:3) [Dkt. 101-9 at 2-3]. These estimated revenues already exceeded the damages sought by CJT in this lawsuit. *See* (CJT Dep. at 84:22 to 85:3) (estimating its 2020 and 2021 earnings) [Dkt. 85-9 at 2-3]

### D. Barrette sought nonparty discovery from Amazon.

Following these depositions, on April 14, 2022, Barrette served nonparty

discovery on Amazon, including requests for documents relating to CJT's mitigation

efforts. *See generally* [Dkt. 101-11 at 7]. Critically, Amazon volunteered to provide

Barrette with CJT's revenue information by April 22, 2022 – mooting Barrette's need to

seek that information from CJT. *See* (Ex. 5 at 2) (discussing this offer). In its later pursuit

of CJT's Amazon-related documents, Barrette did not disclose to CJT or to the Court

that it already had access to this information. *Cf.* [Dkt. 74] ("CJT's failure precludes

Barrette from defending itself in this lawsuit").

CJT initially objected to these nonparty discovery requests, see [Dkt. 101-12], but

ultimately withdrew its objection during a May 11, 2022, discovery conference with the

Court.

### E. The Court issued its first *Order* [Dkt. 53].

Following this discovery conference, on May 23, 2022, the Court *sua sponte* issued

its *Order* [Dkt. 53], directing that:

> (**1**) "CJT shall provide Defendant with communications between CJT and Ms.
> Lewis-Jett," relating to "the parties' claims and defenses stemming from the
> drafting of the agreement at issue;"
>
> (**2**) "[d]ocuments relating to damages, including profits, income statements,
> balance sheets, etc." are "discoverable, seeking information applicable to
> Defendant's mitigation defense;" and
>
> (**3**) "production shall be expedited and occur as soon as reasonably possible."
> [Dkt. 53 at 1-2].

The Court also "f[ound that] these documents [relating to damages, including profits, income statements, balance sheets, etc. are] discoverable, seeking information applicable to Defendant's mitigation defense." [Dkt. 53 at 1].

### F.  CJT gathered Amazon-related documents.

CJT then gathered documents relating to its relationship with Amazon. From late May through early July 2022, the parties also conferred several times about this production. When the parties reached an impasse relating to seeking Amazon's consent prior to production of these documents, Barrette requested a second discovery conference.

### G. The Court issued the *Discovery Conference Order* [Dkt. 64].

On July 14, 2022, the Court conducted a second discovery conference to address CJT's production of Amazon-related documents. The Court also addressed CJT's concerns about Barrette's efforts in discovery.

Then, on July 21, 2022, the Court issued its *Discovery Conference Order* [Dkt. 64], ordering CJT "to produce any outstanding items within seven days of this Order, which includes but is not limited to: (1) Documents showing CJT's revenues, expenses, and profits in 2019, 2020, 2021, and early 2022; (2) Documents and other records relating to lost revenue or other damages suffered by CJT; and (3) Documents relating to CJT's subsequent work for Amazon." [Dkt. 64 at 3]. In the same order, the Court directed Barrette to "supplement [certain discovery] responses under oath**.**" [Dkt. 64 at 3].

The Court subsequently extended the deadlines for the parties to comply with the *Discovery Conference Order*, including extending CJT's deadline to August 9, 2022. [Dkt 71]. CJT produced the Amazon-related documents it had gathered on August 1, 2022. [Dkt. 101-23]. Later that day, CJT notified the Court of its belief it had complied with Dkt. 64 through its *Reply in Support of Plaintiff's Motion for Enlargement of Time to Produce Amazon Documents*. [Dkt. 70 ¶ 7].

### H. The parties conferred about compliance with the *Discovery Conference Order*, and Barrette filed its contempt motion.

On August 11, 2022, the parties conferred telephonically to discuss their respective claims that the other had not complied with the *Discovery Conference Order* [Dkt. 64]. *See generally* [Dkt. 101-24]. During the conference, counsel for CJT relayed their understanding that CJT had already produced all mitigation documents in its possession, custody or control – but promised to ask CJT to again examine its records to determine if any additional such documents existed. Then, on August 23, 2022, Barrette filed *Defendant's Motion to Hold Plaintiff in Contempt* [Dkt. 72].

8

### I. Amazon began producing invoice information in September 2022.

Beginning on September 6, 2022, Amazon began "producing the extracted information from the invoices between CJT and Amazon Logistics." [Dkt. 114-8]. Two days later, on September 8, 2022, counsel for CJT notified Barrette of its understanding that:

> Amazon has not issued year-end Form 1099s to CJT, and CJT is reliant on information contained within an app or website to compile this information for tax purposes. CJT has been unable to file its 2021 taxes, and has been required to seek extensions (currently through October 14), because it remains unable to access that information.

[Dkt. 114-7].

When counsel for CJT subsequently discovered that CJT had access to at least some of the Amazon invoices subject to the *Discovery Conference Order* they promptly contacted Amazon's counsel, requesting:

> [H]elp in identifying any documents in CJT's possession, custody, or control that would establish its revenues from Amazon. CJT has previously worked with its Amazon business manager to obtain such documents, with only limited success. Any aid in locating revenue statements (such as invoices) or tax documents (such as Forms 1099) would be a boon.

(Ex. 6 at 2.) The same day, in response to counsel's request, Amazon began directly producing CJT's invoices to both parties. (Ex. 7) ("With the understanding that Plaintiff does not have access to these records, please find Amazon's first confidential production of invoices that corresponds to the extracted data produced by Amazon last

week (Bates 20-21).”). *See also* (Ex. 5 at 2) (noting that it produced invoices in response to

CJT’s request for help rather than Barrette’s discovery).[1]

### J.  CJT supplemented its production of mitigation documents without need for further Court intervention.

On November 4, 2022, following the Jetts’s submission of their 2021 taxes

in October 2022, CJT produced its newly created 2021 *Schedule C.*

[Dkt. 114-3 at 6-7]. On December 30, 2022, it produced 200 pages of emails

relating to the period of time during which CJT set up and began its work for

Amazon. [Dkt. 114-9]. Despite its objections to Barrette’s demands for the

nonparty Jetts’s complete tax records, CJT also produced copies of those records

for 2019, 2020, and 2021 federal tax returns and supporting documents in January

2023; its initial production redacted information unrelated to CJT. [Dkt. 114-10].

CJT subsequently made the unredacted documents available for Barrette’s

inspection, at Barrette’s demand. It is CJT’s understanding that no further

mitigation-related documents or information have been requested by Barrette;

and CJT made itself and the Jetts available for reconvened depositions in March

2023.

---

[1]  Barrette has persistently ignored CJT’s causal role in Amazon’s invoice production in its representations to the Court. *See* [Dkt. 91 at 4] (claiming the invoices were produced “in response to Defendant’s nonparty subpoena to Amazon,” and that “Amazon – not Plaintiff – produced documents relating to Plaintiff’s subsequent work for Amazon. . . .”); [Dkt. 160 ¶ 19] (claiming that “Amazon – not CJT – produced more  documents relating to CJT’s subsequent work for Amazon to both CJT’s counsel and Barrette’s counsel.”)

## IV.   LEGAL STANDARD

"[A] court has the inherent authority to manage judicial proceedings and to regulate the conduct of those appearing before it, and pursuant to that authority may impose appropriate sanctions to penalize and discourage misconduct." *Ebmeyer v. Brock*, 11 F.4th 537, 546 (7th Cir. 2021) (quoting *Ramirez v. T&H Lemont, Inc.*, 772, 776 (7th Cir. 2016)). Such "sanctions [ ] must be proportionate to the circumstances." *Id*. at 547 (quoting *Donelson v. Hardy*, 931 F.3d 565, 569 (7th Cir. 2019)) (cited at Dkt. 155 at 21). "Considerations relevant to proportionality include the extent of the misconduct, the ineffectiveness of lesser sanctions, the harm from the misconduct, and the weakness of the case." *Id*. (quoting *Donelson*, 931 F.3d at 569).

"Under Rule 37, sanctions may include striking pleadings, dismissing an action, entering default judgment, and/or "ordering the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." [Dkt. 155 at 21] (quoting Fed. R. Civ. P. 37(b)(2)(A) and (C)). The purpose of this rule is to make the injured party whole, "as well off as if the opponent had respected his legal rights in the first place." *Rackemann v. LISNR, Inc.*, 2018 WL 3328140, at *5 (S.D. Ind. July 6, 2018) (quoting *Garbie v. Daimler Chrysler Corp.*, 211 F.3d 407, 411 (7th Cir. 2000)). Accordingly, such awards are not strictly limited to "attorney fees directly related to making the motion," but may also include "expenses . . . that would not have been sustained had the opponent conducted itself properly." *Id*. (quoting *Aerwey Labs., Inc. v. Arco Polymers*,

11

*Inc.*, 90 F.R.D. 563, 565 (N.D. Ill. 1981)). Nonetheless, "[a]ttorneys' fees that are imposed as a sanction pursuant to a trial court's inherent authority 'may go no further than to redress the wronged party for losses sustained,' and the court 'may not impose an additional amount as punishment for the sanctioned party's misbehavior.'") *REXA, Inc. v. Chester*, 42 F.4th 652, 675 (7th Cir. 2022) (quoting *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017)

"This Court utilizes the 'lodestar' method to determine reasonable attorney's fees by multiplying a reasonable rate by the number of hours reasonably expended on the motion." *Rackemann*, 2018 WL 3328140, at *5 (citing *Johnson v. GDF, Inc.*, 668 F.3d 927, 929 (7th Cir. 2012). "In determining a reasonable rate, the prevailing attorney is presumptively entitled to the rate actually charged. . . ." *Id.* (citing *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150) (7th Cir. 1993)). "District courts have exceptional discretion to determine whether the time an attorney spends on a motion to compel is reasonable." *Id.* (citing *Gautreaux v. Chi. Hous. Auth.*, 491 F.3d 649, 659 (7th Cir. 2007)).

"The prevailing party bears the burden of demonstrating that its hours and fees are reasonable." *Id.* (citing *Grady v. Affiliated Comp. Servs. ACS*, 2014 WL 6066049, at *2 (S.D. Ind. Nov. 13, 2014)). "If the fees are excessive in any respect, such as because the attorneys engaged in overlapping work that was inefficient, a reduction in fees is warranted." *REXA, Inc.*, 42 F.4th at 675 (citing *Schlacher v. L. Offcs. Of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 857 (7th Cir. 2009)). CJT does not dispute the reasonableness of the hourly rates charged by Barrette's counsel, only the reasonableness of time it has claimed in its *Fee Petition*.

## V.   LEGAL ARGUMENTS

In its more than 120 pages of invoices, Barrette's $180,000 *Fee Petition* goes beyond "the reasonable fees and expenses associated with litigating its motion for contempt, dkt. 72, responding to CJT's objection, dkt. 114, and defending against CJT's motion for contempt, dkt. 127,"[Dkt. 155 at 21]. Barrette has effectively asked the Court to shift its fees in the case – to reimburse it for its general discovery and work it would have performed regardless of CJT's compliance with the *Discovery Conference Order* [Dkt. 64]. It also substantially overbilled its compensable activities, including through overstaffing and duplicative work. Because its non-compensable time substantially outstrips that which is compensable, the Court should not award its 'fees-on-fees' for making an unreasonable request.

### A.  Time spent on matters unrelated to sanctioned misconduct is not compensable.

To craft an appropriate award, the Court should first exclude Barrette's entries that do not relate to violations of the *Discovery Conference Order* [Dkt. 64] (or defending against Dkt. 127). *See REXA, Inc.*, 42 F.4th at 675 ("The court must address what amount of fees are traceable to the litigation misconduct, and it may not impose an additional amount as punishment.") (citing *Haeger*, 137 S. Ct. at 1186). *Accord* [Dkt. 155 at 21] (awarding fees associated with litigating Dkts. 72, 114, and 127]. Because CJT's production obligation stemmed from that order rather than Barrette's underlying discovery, the Court should exclude Barrette's expenses incurred prior to CJT's compliance deadline of August 9, 2022. *See* [Dkt. 71 at 3] (setting the deadline). It should

likewise exclude Barrette's expenses associated with other matters in the case, such as

taking discovery and routine motion practice.

   1.   *The Court should exclude fees incurred by Barrette prior to its*
        *Discovery Conference Order [Dkt. 64].*

Because the Court's sanctions stem from the violation of the *Discovery Conference*

*Order* [Dkt. 64], it should not award Barrette any of the $33,786.80 in fees it is seeking for

work performed prior to August 9, 2022. *See* [Dkt. 169-3 at 16 to 64] (entries for

11/1/2021 to 8/8/2022). Prior to that compliance deadline, CJT was not in violation of

the *Discovery Conference Order* [Dkt. 64]. Barrette would not otherwise be entitled to

recover fees expended during that period. *See Panwar v. Access Therapies, Inc.*, 2014 WL

820023, at *10 (S.D. Ind. Mar. 3, 2014) (excluding fees prior to the discovery order

compliance date because "Defendants did not violate the Court order compelling

discovery until [then]").

Barrette never issued a Rule 34 request for documents relating to CJT's

relationship with Amazon, hence its vague reference to having "served written

discovery on CJT to determine CJT's alleged damages." [Dkt. 169 at 4]. *See also generally*

[Dkt. 85-3] (9/1/21 document requests). Its only written discovery to CJT into damages

mitigation was Interrogatory No. 14. *See* [Dkt. 85-2 at 9] ("Describe . . . all steps Plaintiff

has taken in an effort to mitigate any of the damages. . . ."). Barrette elected to take CJT's

Rule 30(b)(6) in March 2022, subject to counsel's February 24, 2022 objection to its

accompanying requests to bring documents. [Dkt. 85-8 at 1]. Rather than serve a proper

Rule 34 request on CJT, it instead chose to make its request to Amazon. [Dkt. 85-11].

Even the the Court's May 23, 2022 *Order* [Dkt. 53] stemmed not from any discovery to CJT – but to CJT's objection to that nonparty discovery. *See* [Dkt. 85-14] (requesting a conference on the issue).[2]

Thus, having failed to serve a Rule 34 request seeking the documents subject to the *Discovery Conference Order* [Dkt. 64], the Court should not award fees incurred prior to August 9, 2022.

2.   *The Court should exclude fees incurred by Barrette in connection with other litigation matters.*

The Court should likewise exclude from Barrette's fee award amounts that were incurred at any time for reasons unrelated to pursuing violations of the *Discovery Conference Order* [Dkt. 64]. *See* (Ex. 8) (extracting $74,948.40 in unrelated entries).[3] Principal among these are Barrette's fees relating to its nonparty discovery requests to Amazon (totaling $13,567.50), and its discovery to CJT (totaling $48,199.70).[4] (Ex. 9) Other significant categories of such expenses stem from the parties' requests for extensions to the case management deadlines (totaling $5,649.85), and fees paid to court reporters for depositions (totaling $2,505.75). (Ex. 10) (extracting such entries).[5]

---

[2]   CJT withdrew that objection at the May 23, 2022 discovery conference without any need for motion practice

[3]   These entries for period after the August 9, 2022 compliance deadline total $43,047.10.

[4]   These entries for the period after the August 9, 2022 compliance deadline are $8,911.80 (for nonparty discovery) and $26,615.65 (for party discovery).

[5]   The entries for the period after the August 9, 2022 compliance deadline are $2,581.20 (for extension requests) and $16,698.20 (for deposition expenses).

The fees Barrette incurred in conducting discovery – whether from Amazon or from CJT directly – are not the result of violations of the *Discovery Conference Order* [Dkt. 64]. *Contra* [Dkt. 169-3 at 6] ("The time and effort incurred in obtaining the information and documents regarding CJT's work for Amazon is very much 'associated with litigating its motion for contempt.'"). Barrette elected to pursue nonparty discovery from Amazon on April 14, 2022, see [Dkt. 85-11], well before raising these issues with the Court. And it also did so without serving a Rule 34 request for Amazon-related documents from CJT directly. *See* [Dkt. 85-5] (Barrette's document requests).

Barrette's discovery efforts also went far beyond seeking to compel the production of the mitigation-related documents that led to the Court's sanctions order. Barrette's document requests to (and subsequent disputes with) Amazon included five other categories covering various types of communications, applications, agreements, and scope of services. [Dkt. 85-11 at 7] (nonparty subpoena); (Ex. 11) (Barrette's summary of its disputes with Amazon); (Ex. 5) (Amazon's summary of same). CJT timely provided many of these documents as directed by the Court, including its rate sheet [JETT00262], its Amazon contract [JETT02263], and its list of invoiced jobs [JETT-002281 to 2303]. [Dkt. 114-4 at 2-45] (CJT's 8/1/22 production); [Dkt. 114-5] (CJT's 2020 Schedule C). As to CJT's compensation from Amazon, it is critical to note that Amazon volunteered to provide Barrette with that information no later than April 22, 2022 – mooting Barrette's need to seek that information from CJT. *See* (Ex. 5 at 2) (discussing Amazon's proposal).

16

Barrette's entries relating to "follow-up discovery, participating in telephonic discovery conferences, [and] taking an agreed-upon Rule 30(b)(6) deposition," [Dkt. 169] cover the whole of its discovery efforts. *See, e.g.*, [Dkt. 169-3 at 21] ("Participate in telephonic conference call . . . regarding the parties' outstanding discovery disputes."); [Dkt. 169-3 at 24] ("Work on outstanding discovery issues."); [Dkt. 169-3 at 28] ("Analyze the parties' discovery-deficiency letters, [REDACTED], to strategize regarding outstanding information to collect"). Barrette's discovery deficiency letters reveal that it was pursuing supplementation of 17 discrete written discovery requests - none of which sought mitigation-related documents. *See generally, e.g.*, [Dkt. 85-4] (12/1/21 letter); [Dkt. 85-6] (2/28/22 letter); [Dkt. 85-7] (4/4/22 letter).[6] These entries also relate to Barrette's responses to deficiencies pursued by CJT – including its long-running failure to provide a calculation of its own damages.[7] *Compare, e.g.*, (Ex. 12) ("Barrette still has not satisfied its obligations to provide damages discovery") *with* [Dkt. 169-3 at 49] (associated fees). *See also* [Dkt. 128-4 at 4] (CJT's 11/19/21 deficiency letter).

Despite its claims to the contrary, see [Dkt. 169-3 at 7], Barrette is seeking reimbursement for its deposition-related expenses. *See, e.g.*, [Dkt. 169-3 at 28-29] ("Outline topics to cover and documents to collect during Clifton Jett Transport's Rule

---

[6]   Its April 4 letter sought Amazon-related documents in connection with the already-taken Rule 30(b)(6) deposition of CJT. [Dkt. 85-7 at 3-4]. As previously noted, however, Barrette took that deposition subject to CJT's timely objections to those requests. *See* [Dkt. 85-8].

[7]   Barrette failed to provide a damages calculation until May 13, 2022 – 10 months after the July 2021 initial disclosures deadline. [Dkt. 156-2] (damages disclosure).

30(b)(6) deposition.") Throughout this entire lawsuit, Barrette has repeatedly reissued the same 14 topics for deposition – only two of which relate to mitigation of damages.[8] (Exs. 1-4.) Barrette also included time spent on general document review – including the Barrette-related invoices it claims to have excluded. *Compare* [Dkt. 169-3 at 17] ("Analyze invoices produced by Clifton Jett Transport") *with* [Dkt. 169-3 at 6] ("Barrette does not request costs or fees related to analyzing two bankers' boxes of invoices produced by CJT").

Barrette further seeks reimbursement for its general litigation expenses. It included many entries for client communications. *See, e.g.,* [Dkt. 169-3 at 21-22] (December 2021 call with Deb McGowan relating to, among other things "discovery"); [Dkt. 169-3 at 71] (multiple entries relating to "next steps," "case strategy," and even [REDACTED]); [Dkt. 169-3 at 132] ("Emails with client regarding status."); [Dkt. 169-3 at 71] ("Prepare for call tomorrow with client regarding [REDACTED]."). It included unrelated motion practice. *See, e.g.,* [Dkt. 169-3 at 30] (February 2022 extension of case management deadlines); [Dkt. 169-3 at 73] (September 2022 extension of same); [Dkt. 169-3 at 82-83] (November 2022 extension of same). It even included numerous entries relating to its case evaluation process. *See, e.g.,* [Dkt. 169-3 at 49-50] ("Strategy regarding next steps following the depositions of Plaintiff."); [Dkt. 169-3 at 53]

---

[8]    It was at the first of these depositions that CJT freely disclosed that its Amazon-related earnings were greater than the damages it sought in this case. *See* (CJT Dep. at 84:22 to 85:3) (estimating its 2020 and 2021 earnings) [Dkt. 85-9 at 2-3]

("Strategy regarding extension of deadlines."); [Dkt. 169-3 at 58] ("Strategy regarding

extension of liability discovery."); [Dkt. 169-3 at 71] ("Outline case action items. . . .").

**B.  Time spent on otherwise necessary work is not compensable.**

The Court should also exclude the $56,900.35 in fees for work that Barrette

"would have had to have done [ ] regardless of when [CJT] produced the documents."

*Senior Lifestyle Corp.*, 2020 WL 6870919, at *4 (S.D. Ind. June 2, 2020) (citing *Haeger*, 137 S.

Ct. at 1187) ("[W]hen the cost[ ] would have been incurred in the absence of the

discovery violation, then the court (possessing only the power to compensate for harm

the misconduct has caused) must leave it alone." (internal quotations omitted)). *See*

(Ex. 13) (extracting such entries).[9] By way of example, this includes Barrette's

participation in Court-ordered status conferences. *See, e.g.*, [Dkt. 169-3 at 82] (nearly

$1,000 in entries relating to the 11/2/22 status conference). It includes reviewing

documents produced by CJT and Amazon. *See, e.g.*, [Dkt. 169-3 at 72] (entries for

reviewing CJT's Amazon invoices); [Dkt. 169-3 at 93-94] (entries for reviewing CJT's fall

2020 emails with Amazon); [Dkt. 169-3 at 98] (nearly $1,000 in entries for reviewing

CJT's tax records on 1/25 and 1/26/23 alone). And it includes Barrette's deposition-

related expenses. *See, e.g.*, [Dkt. 169-3 at 114] (roughly $3,600 in entries on 3/7 and

3/8/23 alone); [Dkt. 169-3 at 118] ($2,505.75 in deposition transcript expenses).

These entries can only be considered "associated with litigating [Dkts. 72, 114,

127]" in the sense that they have some relation to the underlying subject matter. *See*

---

9   The Court should note that these entries substantially overlap with those that are
    unrelated.

[Dkt. 155]. They do not have the sort of causal relationship required by the Supreme Court in *Haeger*. *See* 581 U.S. at 109 ("This kind of causal connection, as this Court explained in another attorney's fees case, is appropriately framed as a but-for test: The complaining party [ ] may recover 'only the portion of his fees that he would not have paid but for' the misconduct.'") (quoting *Fox v. Vice*, 563 U.S. 826, 836 (2011)). Barrette understandably urges the broadest possible interpretation for its fee award, but the Court should not rely on The Cambridge Dictionary and Merriam Webster over the Supreme Court's guidance on the permissible scope of fee awards. *Cf.*, [Dkt. 169-3 at 2-3] (relying on dictionary definitions rather than legal authority).

### C. After accounting for Barrette's excessive or duplicative entries, the Court should permit $36,857.97 in fees.

After eliminating time that is either unrelated to the sanctioned misconducted or was otherwise necessary, "[t]he court also must determine whether the time allotted to the given task is reasonable under the circumstances." *Illiana Surg. & Med. Ctr. LLC v. Hartford Fire Ins. Co.*, 2014 WL 1094455, at *3 (N.D. Ind. Mar. 19, 2014) (citing *E.E.O.C. v. Accurate Mech. Contr., Inc.*, 863 F.Supp. 828, 834 (E.D. Wisc. 1994)). "Duplicative and excessive time cannot be recovered, and the court will scrutinize a fee petition for such carefully." *Senior Lifestyle Corp. v. Key Benefit Admin., Inc.*, 2019 WL 5565973, at *6 (S.D. Ind. Mar. 29, 2019) (quoting *Illiana*, 2014 WL 1094455 at *3).

"There is no magic fee or hour quantity in terms of what constitutes the appropriate amount of time to be spent on efforts pertaining to a motion to compel; rather the Court will look to relevant factors such as 'the length of the motion or memorandum, the complexity of the case, and the citation to authority contained in the document . . . when assessing the reasonableness of the time allotted." *Senior Lifestyle Corp.*, 2019 WL 5565973, at *4 (quoting *Illiana*, 2014 WL 1094455, at *3). Subject to these factors, the Court should apply a general benchmark of "approximately one hour per page" in assessing the reasonableness of Barrette's time spent drafting its submissions. *See Struve v. Gardner*, 2021 1948868, at *3 (S.D. May 14, 2021) (gathering cases from other District Courts in the Seventh Circuit and concluding such time is "not unreasonable on its face"). Moreover, while "efficiency can sometimes be increased through collaboration, overstaffing cases inefficiently is common, and district courts are therefore encouraged to scrutinize fee petitions for duplicate billing when multiple lawyers seek fees." *Schlacher v. Law Offices of Phillip J. Rotche & Assoc.*, P.C., 574 F.3d 852, 858 (7th Cir. 2009) (cited in *Senior Lifestyle Corp.*, 2019 WL 5565973, at *6).

Considering these factors, the Court should permit $36,857.97 in fees "associated with litigating [Dkts. 72, 114, and 127]." [Dkt. 155 at 21].

21

1.    *The Court should permit $12,206.07 in fees relating to Defendant's Motion to Hold Plaintiff in Contempt [Dkt. 72].*

The Court's *Order* [Dkt. 155] expressly allows for the recovery of fees related to litigating Barrette's initial contempt motion, but it should reduce those fees from $16,873.92 to $12,206.07. Barrette's counsel spent 45.7 hours on the 35 unique pages of the motion [Dkt. 72], initial brief [Dkt. 74], and reply [Dkt. 90]. *See* (Ex. 14) (extract of hours); (Ex. 15) (highlighting duplicated passages from Dkt. 72); (Ex. 16) (highlighting duplicated passages in Dkt. 90). Barrette's reliance on multiple attorneys and staff caused it to incur excessive time beyond the reasonable one hour per page. Attorney Kevin Roberts incurred a reasonable 32.6 hours ($12,206.07) in the briefing, but Barrette has asked the Court for compensation for an additional 13.1 hours ($4,667.85) incurred by other attorneys and staff. (Ex. 14.) The Court should eliminate those additional 13.1 hours as duplicative and excessive. After this reduction, Barrette would be compensated at a reasonable rate of approximately 56 minutes per page.

2.    *The Court should permit $5,872.50 in fees relating to Plaintiff's Objection to Magistrate's Report and Recommendation [Dkt. 114].*

The Court's *Order* [Dkt. 155] likewise allows for the recovery of fees related to litigating Barrette's response to *Plaintiff's Objection to Magistrate's Report and Recommendation* [Dkt. 114], but it should reduce those fees from $19,557.00 to $5,872.50. (Ex. 17) (extract of hours). Although Barrette's single brief [Dkt. 120] contained only approximately 15 pages of original material, it is seeking compensation for 49.6 hours of attorney and staff time. *See* (Ex. 18) (highlighting duplicated passages in Dkt. 120); (Ex. 17) (extract of hours). In addition to the nearly two hours per original page spent by

principal author Attorney Ellen Pactor (27.3 hours), Barrette has asked the Court for

compensation for an additional 22.3 hours incurred by other attorneys and staff.

(Ex. 17). The Court should both eliminate these additional hours as duplicative and

reduce Attorney Pactor's excessive time to 15 hours ($5,872.50). Even with these

substantial reductions, Barrette will be reimbursed at the reasonable rate of one hour

per original page of work.

> 3.    *The Court should permit the full $12,531.60 in requested fees relating to
>        Plaintiff's Motion for Contempt Order [Dkt. 127].*

The Court's *Order* [Dkt. 155] permits Barrette to recover the fees related to

litigating *Plaintiff's Motion for Contempt Order* [Dkt. 127], and CJT agrees that the

requested fees of $12,531.60 are appropriate. Barrette's single brief [Dkt. 137] is 29 pages

long, and its counsel reasonably spent just over one hour per page preparing it.

> 4.    *The Court should permit $6,247.80 in requested fees relating to the June 7, 2023
>        hearing on the cross-motions for contempt.*

The Court's *Order* [Dkt. 155] permits Barrette to recover the fees related to the

June 7, 2023 hearing on the cross-motions for contempt, but the Court should reduce

those fees from $13,834.35 to $6,247.80. *See* (Ex. 19) (extract of hours). Barrette incurred

1.1 hours ($440.55) for the required conferral between counsel on May 22, 2023, as well

as 2.6 hours ($1,041.30) for Attorney Roberts's travel to, and attendance at, the hearing

itself. [Dkt. 169-3 at 127, 132]. CJT agrees that additional preparatory time is

appropriate, but Barrette's expenses far outstrip what is necessary or appropriate. *See,*

*e.g.*, [Dkt. 169-3 at 127] (22.5 hours ($9,029,75) of preparation just between June 5 and

June 7). *See also Carr v. Inch*, 2021 WL 3891651, at *12 (S.D. Ind. Aug. 31, 2021)

("a reasonable amount of time to spend preparing *and* attending a status conference or routine hearing is four times the length of the conference") (emphasis added). A reduced fee award of $6,247.80 is six times the fees incurred by Barrette in traveling to and attending the conference, reflecting a 50% premium over the multiplier applied by the *Carr* court.

**D.  The Court should disallow fees incurred connected with the settlement conference and fee petitions.**

Because Barrette's request for $182,856.40 in attorney fees is facially unreasonable, the Court should deny the fees relating to the August 9, 2023 settlement conference, its fee petitions [Dkt. 112 and 169], as well as the motions collateral to its original contempt motion [Dkt. 65 and 87]. *See Panwar v. Access Therapies, Inc.*, 2014 WL 820023, at *10 (S.D. Ind. Mar. 2014) ("the Court finds Plaintiff's fee request for over $160,000 [stemming from a discovery issue to be] exorbitant and arguably worthy of blanket denial") (citing *Budget Rent-A-Car Sys., Inc. v. Consol Equity, LLC*, 428 F.3d 717, 718 (7th Cir. 2005) (denying an award of attorney's fees in its entirety, as an abuse of process, because the request was exorbitant). The $36,857.97 proposed by CJT reasonably compensates Barrette for its briefing on Dkts. 72, 114 and 127 at a one-hour per page rate, plus six times the fees associated with traveling to and attending the June 7, 2023 hearing. *See* Section 5.C, *supra* at 20-24. The exclusion of fees for these activities is appropriate because they have hindered the efficient resolution of the Court's sanctions rather than serving them.

1.    *Barrette's pursuit of fees-on-fees has been unreasonable.*

As described above, Barrette's *Fee Petition* is unreasonably excessive across multiple dimensions. "Parties and attorneys need to be discouraged from submitting unreasonable requests in the hope that the opponent and/or the court will simply be unable or unwilling to find all the unreasonable and improper charges." *Eli Lilly and Co. v. Zenith Goldline Pharmaceuticals*, 264 F.Supp.753, 783 (S.D. Ind. 2003). *Cf.*, [Dkt. 169 at 2 n. 2] ("It is worth noting that, although CJT objected broadly to Barrette's demand for its fee award, CJT never made specific objections to any line item"). Under these circumstances, "[m]uch of the time [i]s spent on attempts to justify excessive and unreasonable fees and expenses," with the result being "to multiply work for [the responding party] and the court, dealing with matters that never should have been submitted to the court at all." *Id*. (gathering supporting authority from the 1st, 2nd, and 7th Circuit Courts of Appeals). CJT worked in good faith to resolve the expenses subject to Dkt. 155 without the need for motion practice, but the scope of Barrette's fee request prevented the parties from reaching common ground. *See* [Dkt. 169-1 at 2] (identifying the substantial overbreadth to Barrette on 7/25/23); [Dkt. 169-2] (requesting a settlement conference on 7/28/23).

Moreover, Barrette claims an independently unreasonable $28,955.80 in fees relating to the parties' post-order settlement attempts ($7,537,50), its *Bill of Costs* [Dkt. 112] ($12,531.60) and its subsequent *Fee Petition* ($8,453.35) [Dkt. 169]. *See* (Ex. 20) (extracted hours). Barrette's original 16-page *Bill of Costs* [Dkt. 112] involved 31.8 hours of work. (Ex. 20.) Like its practice with previous successive briefs, Barrette reused

25

approximately 10 of those pages in its 21-page *Fee Petition*. *See* (Ex. 21) (highlighting duplicated passages from Dkt. 112); (Ex. 22) (highlighting duplicated passages in Dkt. 169). It likewise reused approximately 8 of Attorney's Kaiser's original declaration [Dkt. 112-1] in his current 14-page declaration [Dkt. 169-3]. *See* (Ex. 23) (highlighting duplicated passages from Dkt. 112-1); (Ex. 24) (highlighting duplicated passages in Dkt. 169-3). This excessive time is driven largely by the more than 20 hours Barrette's counsel spent re-analyzing its almost identical set of invoices. *See* [Dkt. 169-3 at 135 to 140] (setting forth such entries).

Barrette's settlement-related fees – which included the parties' attempt to resolve the entire lawsuit – should likewise be excluded because they are improperly inflated by duplication. This is because it claims the time of Attorneys Kaiser ($4,444.65) and Pactor ($3,092.85), principally due to their joint attendance at the August 9 settlement conference. *See* (Ex. 20) (extracted hours).

> 2.  *Barrette's opposition to CJT's collateral motions undermined the resolution.*

Finally, the Court should deny Barrette's fees incurred in opposing *Plaintiff's Motion for Enlargement of Time to Produce Amazon Documents* [Dkt. 65] ($1,428.75) and CJT's *Motion for Evidentiary Hearing on Defendant's Motion to Hold Plaintiff in Contempt* [Dkt. 87] ($1,666.35). *See* (Ex. 25) (extracted hours). Not only did the Court grant Dkt. 65 (affording Barrette relief in the process), see [Dkt. 71], but the 5-day compliance window initially set by the *Discovery Conference Order* [Dkt. 64] was objectively a short one. As for Dkt. 87, CJT's motion requested the Court to bring the parties together to help

26

"clearly establish what documents [CJT] has in its possession, custody, or control that should be produced in connection with Dkt. 64," and "to satisfy both the Court and Barrette of [CJT's] good faith efforts to provide the documents ordered by the *Discovery Conference Order* [Dkt. 64]." [Dkt. 87 ¶¶ 2, 3]. The basis for Barrette's opposition to this motion is unclear. *See* [Dkt. 91 ¶ 11] ("Plaintiff knows it has not produced all of the documents ordered to be produced by the Court's Order, and Plaintiff is seeking yet another opportunity to preclude Defendant from discovery documents related to Plaintiff's damages and its work for Amazon.") With the benefit of hindsight, given Barrette's request for more than $120,000 in subsequent fees, Barrette should not be compensated for opposing a measure that may have avoided many of those fees.

## VI.   CONCLUSION

WHEREFORE, because Barrette's request for an award of $182,856.40 through its *Fee Petition* [Dkt. 169] is unreasonably excessive, and because a reduced award of $36,857.97 would fairly compensate it for any harm fairly traceable to conduct sanctioned by the Court, the Court should limit Barrette's fee award to $36,857.97.

Respectfully submitted,

/s/ Benjamin C. Ellis
Benjamin C. Ellis
Natalie R. Dickey
Claire E. Hunter
HKM EMPLOYMENT ATTORNEYS LLP
320 N. Meridian St., Ste. 615
Indianapolis, IN 46204
P/F   |   (317) 824-9747
Email  |   bellis@hkm.com
            ndickey@hkm.com
            chunter@hkm.com

27