IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CLIFTON JETT TRANSPORT, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:21-cv-01064-JPH-MG |
| | ) |
| BARRETTE OUTDOOR LIVING, INC., | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO HOLD PLAINTIFF IN CONTEMPT**

Defendant, Barrette Outdoor Living, Inc. ("Barrette"), respectfully submits this Memorandum in Support of its Motion to Hold Plaintiff in Contempt, Dkt. 72.

**INTRODUCTION**

Plaintiff, Clifton Jett Transport, Inc. ("CJT"), sued Barrette for breach of contract, alleging Barrette terminated the parties' Agreement for Transportation Services ("Agreement") in September 2020 before the end of the Agreement's three-year term ending in January 2022. CJT sought hundreds of thousands of dollars in damages for lost revenue from September 2020 through January 2022, and alleged it mitigated its damages by performing work for Amazon from November 2020 through the present. Barrette denied CJT's allegations and sought discovery regarding CJT's alleged work for Amazon.

After almost one year of discovery, multiple written discovery requests, multiple discovery deficiency letters, multiple discovery conferences, an agreed-upon Rule 30(b)(6) deposition, two telephonic discovery conferences with the Court, and two Orders from the Court, CJT still has not produced a single document showing how much money it earned from its alleged work for Amazon

EXHIBIT 15

in 2021 or 2022 and has not produced sufficient documents for Barrette to determine how much money CJT expensed, earned, and profited from its Amazon work in 2020. CJT's failure to produce documents of any kind showing how much money it earned from Amazon in 2021 and 2022 is incomprehensible, unbelievable, and contemptible.

Regardless of whether CJT's failure is the result of an alleged inability to produce documents, less than likely, or an intentional decision to violate the Court's Orders to avoid a reduction of its damages claim, more than likely, CJT has failed to comply with the Court's Orders requiring production of documents showing CJT's expenses, earnings, and profits for 2019 through 2022 and not made a reasonable and diligent effort to comply with the Court's Orders. CJT's failure precludes Barrette from defending itself in this lawsuit, and Barrette respectfully requests the Court to enter an Order holding CJT and its counsel in contempt, dismissing CJT's claims with prejudice, and requiring CJT and its counsel to reimburse Barrette attorneys' fees and costs in seeking documents regarding CJT's alleged work for Amazon and preparing and prosecuting Barrette's contempt motion.

## **RELEVANT FACTUAL BACKGROUND**

On or about March 22, 2021, CJT sued Barrette for breach of contract, alleging Barrette breached the parties' Agreement, CJT has "lost revenue and suffered other damages as a result of [Barrette's] breach of the Agreement," and "Paragraph 9 of the Agreement says if [Barrette] terminates the Agreement without cause, [Barrette] has to pay CJT the pro rata remaining value of the term of the Agreement." Dkt. 1-3 at ¶¶ 17, 19–23.

On September 9, 2021, Barrette served written discovery on CJT to determine CJT's alleged damages and its mitigation efforts, and CJT stated it had "performed work for Amazon beginning in November 2020." Dkt. 73-1 at 11. Through discovery-deficiency letters and

telephonic discovery conferences, Barrette sought additional information and documents relating to CJT's "work for Amazon," including information and documents showing when CJT sought work from Amazon (e.g., CJT's applications to perform work for Amazon), when CJT received an offer to perform work for Amazon (e.g., Amazon's offer to CJT), when CJT agreed to perform work for Amazon (e.g., CJT's agreement with Amazon), what work CJT has performed for Amazon, and how much CJT has earned and profited from its work for Amazon.

CJT did not provide sufficient information or documents regarding the work it performed for Amazon and how much it had earned and profited from that work, and Barrette noticed a Rule 30(b)(6) deposition of CJT to obtain information and documents regarding CJT's work for Amazon. After multiple discussions between counsel for Barrette and CJT, Barrette served an amended and agreed-upon Rule 30(b)(6) deposition notice on CJT specifically commanding production of information and documents regarding CJT's damages and its Amazon work:

> 5. All documents relating to Plaintiff's claimed damages, including, but not limited to, Plaintiff's invoices, balance sheets, income statements, and cash-flow statements from 2019 through the present.
>
> 6. All documents relating to steps Plaintiff has taken in an effort to mitigate any of the damages that Plaintiff claims to have sustained as a result of any act or omission by on or on behalf of Defendant, *including all documents regarding the work performed for Amazon.*
>
> 7. All documents regarding work Plaintiff performed for other shippers and/or entities from January 2, 2019, through the present, including documents reflecting each entity work was performed for, the dates of performance, the locations of performance, compensation related to the performance, and agreements related to the performance.

Dkt. 73-2 at 6 (emphasis added).

On March 3, 2022, and March 4, 2022, Barrette deposed CJT's corporate representative, Clifton Jett ("Jett"), and Jett's wife, Gwennetta Lewis-Jett ("Lewis-Jett"). CJT's corporate representative did not bring any documents relating to CJT's work for Amazon and did not bring

3

EXHIBIT 15

sufficient documents relating to its alleged damages. In response to Barrette's amended and agreed-upon Rule 30(b)(6) deposition notice requesting documents relating to CJT's damages and its work for Amazon, CJT only produced the following 23 pages of documents, which do not contain any information about how much CJT earned/profited from its work for Amazon in 2020, 2021, or 2022:

1. **2019 1099-MISC – Miscellaneous Income – Nonemployee Compensation Paid to CJT Drivers, Jett2237–2242:** These documents show how much CJT paid miscellaneous contractors in 2019. The documents do not show anything about CJT's work for Amazon or CJT's earnings/profits in 2019, 2020, 2021, or 2022.

2. **2020 1099-NEC – Nonemployee Compensation – Nonemployee Compensation Paid to CJT Drivers, Jett2243–2245**: These documents show how much CJT paid miscellaneous contractors in 2020. The documents do not show anything about CJT's work for Amazon or CJT's earnings/profits in 2019, 2020, 2021, or 2022. The documents also do not distinguish payments to contractors for work performed for Barrette versus work performed for Amazon.

3. **2020 Schedule C to Form 1040 – Profit or Loss from Business (Sole Proprietorship) – Clifton Jett Transport LLC, Jett2254–2255:** This document only shows a portion of CJT's 2020 returns. This document does not distinguish between revenues and expenses for work performed for Barrette versus work performed for CJT.

4. **Check from Barrette Customer to CJT, Jett 2256:** This document is a check from one of Barrette's customers to CJT for work CJT performed for the customer after Barrette's alleged breach. CJT does not explain why it can produce documents relating to work CJT performed for other shippers but why it cannot produce documents relating to work CJT performed for Amazon.

5. **Document Appearing to be Summary of CJT's 2020 Expenses, Jett2257:** This document appears to be a summary of CJT's 2020 expenses. The document dos not distinguish between expenses for work performed for Barrette versus work performed for CJT. The document does not show anything about CJT's earnings/profits in 2019, 2020, 2021, or 2022.

6. **2019 Schedules C and SE to Form 1040 (Sole Proprietorship) – No Business Listed, Jett2258–2260:** This document only shows a portion of a 2019 tax return. This document does not show anything about CJT's

4

EXHIBIT 15

earnings/profits related to work performed for Amazon in 2020, 2021, or 2022.

Despite failing to produce any documents relating to the work CJT performed for Amazon, CJT's corporate representative, Jett, and Lewis-Jett all admitted they had access to and/or had provided information and documents to CJT's counsel regarding CJT's work for Amazon **before** the depositions on March 3, 2022, and March 4, 2022:

1. CJT admitted Amazon documents had been provided to its counsel. Dkt. 73-3 at 6 (CJT Dep. Vol. I 30:10–12); Dkt. 73-4 at 6 (CJT Dep. Vol. II 194:21–195:2).

2. Jett admitted he received statements regarding payments from Amazon and these pay statements were reasonably accessible to him. Dkt. 73-5 at 5 (Jett Dep. 88:7–23).

3. Lewis-Jett admitted she had provided Amazon documents to counsel showing how much revenue CJT earned from Amazon. Dkt. 73-6 at 5 (Lewis-Jett Dep. 116:23–25).

Because of CJT's failure to produce any documents showing how much CJT earned/profited from its work for Amazon, Barrette served a nonparty request on Amazon to obtain information and documents regarding CJT's work for Amazon. CJT's counsel informed Barrette's counsel CJT would not voluntarily agree to produce any Amazon documents and of CJT's intent to move to quash Barrette's nonparty request, and the parties participated in a telephonic discovery conference with Magistrate Judge Garcia on May 11, 2022. Dkt. 53.

Following the parties' conference, the Court issued an Order requiring CJT to produce, among other documents, documents relating to CJT's damages and its work for Amazon on an "expedited" basis and "as soon as reasonably possible." Dkt. 53 at 1–2. The Court's Order specifically noted CJT did not "oppose nonparty requests for production of documents relating to its work for Amazon" and had "withdrawn its objection." Dkt. 53 at 2.

CJT did not produce documents relating to its damages or its work for Amazon on an expedited basis. Instead, on June 24, 2022, more than one month after the Court's Order, CJT's counsel stated CJT "ha[d] provided [counsel with its] Amazon payment records," which included the "invoice date, invoice period, service area, and **amount**," but these records would not be produced until the production was "pre-cleared" by Amazon:

> From: Ellis, Benjamin <bellis@hkm.com>
> Sent: Friday, June 24, 2022 9:55 PM
> To: Roberts, Kevin E.
> Cc: Kaiser, Todd J.; Aaron Williamson
> Subject: CJT v. Barrette - discovery supplementation
>
> [Caution: Email received from external source]
>
> Kevin:
>
> Please be advised that our client has provided us his Amazon payment records. These records reflect the invoice date, invoice period, service area, and amount. As such, we believe these documents—in conjunction with the previously produced tax profit and loss statements—are fully responsive to your inquiry regarding compensation he has received from his work with Amazon.
>
> As we previously discussed, this information is likely subject to a confidentiality provision. Therefore, we really to need Amazon's contact information to get this pre-cleared.
>
> To that end, I wanted to again follow up with you regarding this contact information, so we can have it pre-cleared. Have you had any luck in obtaining contact information for this individual?
>
> Respectfully,
>
> HKM EMPLOYMENT ATTORNEYS LLP
> BENJAMIN C. ELLIS
> MANAGING PARTNER – INDIANAPOLIS
>
> ARLINGTON  LAS VEGAS
> ATLANTA  LOS ANGELES
> BALTIMORE  MINNEAPOLIS
> BELLEVUE  PHOENIX
> BIRMINGHAM  PITTSBURGH
> BOSTON  PORTLAND
> CHARLOTTE  SAN DIEGO

Dkt. 73-7 at 2 (emphasis added).

Barrette's counsel informed CJT's counsel the production of documents in CJT's possession did not need to be "pre-cleared" by Amazon, and the parties participated in a second telephonic discovery conference with Magistrate Judge Garcia on July 14, 2022. Dkt. 64 at 3.

There, CJT's counsel indicated they were in possession of documents relating to CJT's work for Amazon and had the ability to produce the documents the same day. The Court stated it

6

EXHIBIT 15

would issue an Order requiring production of the documents within seven days. Barrette's counsel specifically requested the Court's Order include language ordering production of documents relating to CJT's work for Amazon without regard to Amazon's permission. The Court indicated it would include such language. CJT's counsel did not make any further objections.

On July 19, 2022, the Court issued an Order to produce within seven days three categories of documents:

1. Documents showing CJT's revenues, expenses, and profits in 2019, 2020, 2021, and early 2022;

2. Documents and other records relating to lost revenue or other damages suffered by CJT; and

3. Documents relating to CJT's subsequent work for Amazon.

Dkt. 64 at 3.

The Court, again, as discussed with the parties' counsel, specifically stated CJT was required to produce documents relating to CJT's work for Amazon without regarding to Amazon's permission:

> The existence of a contractual obligation for CJT to seek Amazon's permission before releasing any documents does not preclude this Court from issuing an order requiring CJT to produce these otherwise admissible documents.

Dkt. 64 at 2–3.

On July 22, 2022, instead of complying with the Court's specific order to produce documents relating to CJT's work for Amazon, which had been provided to CJT's counsel prior to CJT's Rule 30(b)(6) deposition on March 3 and 4, 2022, and which CJT's counsel indicated could have been produced on July 14, 2022, CJT and its counsel moved to enlarge the time to produce the Amazon documents to "work[] with Amazon's counsel to secure authorization to

7

EXHIBIT 15

release [Amazon] documents" and because "Amazon's counsel will require additional time to review the proposed production . . . ." Dkt. 65 at ¶¶ 5–6.

Barrette objected to CJT's motion and requested sanctions against CJT, including dismissal of CJT's claims and reimbursement of Barrette's attorneys' fees and costs. Dkt. 68 at ¶¶ 1–15. On August 1, 2022, prior to any ruling from the Court, Amazon approved CJT's release of CJT's documents to Barrette, CJT produced 45 pages of documents to Barrette, CJT informed the Court it had "produced the documents subject to the Court's *Order* [Dkt. 53], see also [Dkt. 64]," and CJT asked the Court to deny Barrette's request for sanctions. Dkt. 70 at ¶¶ 1–14.

CJT's 45 pages of documents, however, failed to comply with the Court's Order. The documents did not provide any information about when CJT applied to work for Amazon, when CJT received an offer from Amazon, when CJT accepted any offer, or how much CJT earned/profited from its Amazon work:

    1.    **DSP Offer Details, Jett2262:** This document does not appear to be an actual offer from Amazon to CJT. This document is undated, unsigned, and provides no information about when CJT applied to work for Amazon, when CJT received an offer from Amazon, when CJT accepted any offer, or how much CJT earned/profited from its Amazon work.

    2.    **DSP Partner Program Agreement, Jett2263–2269:** This document does not appear to be an actual agreement between Amazon and CJT. This document is undated, unsigned, and provides no information about when CJT applied to work for Amazon, when CJT received an offer from Amazon, when CJT accepted any offer, or how much CJT earned/profited from its Amazon work.

    3.    **DSP U.S. Program Policies, Jett2270–2279:** This document is unsigned and undated and provides no information about when CJT applied to work for Amazon, when CJT received an offer from Amazon, when CJT accepted any offer, or how much CJT earned/profited from its Amazon work. <u>Notably, though, the document states Amazon will generate invoices for payments owed to its DSPs and deliver the invoices each week to the DSP. CJT has not produced any of these invoices from Amazon</u>.

4. **Printouts of Amazon Payment Disputes from December 2020 to Early 2021, Jett2280–2303:** These documents appear to be printed from Amazon's online portal. The documents show invoice dates, periods, types, and service areas. The documents, however, do not show any invoice amounts, and CJT has not produced any invoices even though it appears CJT may be able to "view" the invoices on the online portal. Dkt. 73-8 at 2–25.

5. **2020 Schedule C to Form 1040 – Profit or Loss from Business (Sole Proprietorship) – Clifton V Jett, Jett2304–2305:** This document only shows a portion of Jett's 2020 returns. This document does not distinguish between revenue and expenses for work performed for Barrette versus work performed for Amazon.

6. **2020 Schedule C to Form 1040 – Profit or Loss from Business (Sole Proprietorship) – Clifton Jett Transport LLC, Jett2306–2307:** This document only shows a portion of CJT's 2020 returns. This document does not distinguish between revenues and expenses for work performed for Barrette versus work performed for Amazon. This document was previously produced.

On August 8, 2022, the Court granted CJT's motion to enlarge the time to provide Amazon documents and ordered CJT to provide the documents and information by August 9, 2022. Dkt. 71 at 1–2. CJT did not provide any documents or information on or after August 9, 2022.

## ARGUMENT

**A.  This Court should enter an Order holding CJT in contempt of Court.**

This Court has discretion to enter a finding of civil contempt, and maintains the "inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966) (citations omitted); *Am. Petroleum Inst. v. Bullseye Auto. Prod. Inc.*, No. 1:13-cv-1112-TWP-DKL, 2016 WL 7092841, at *5 (S.D. Ind. Dec. 5, 2016). "With respect to civil contempt proceedings, '[j]udicial sanctions . . . may, in a proper case, be employed for either or both of two purposes; to coerce [a party] into compliance with the court's order, and to compensate the complainant for losses sustained.'" *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947); *see also Bailey v. Roob*, 567 F.3d 930, 933 (7th Cir. 2009).

9

EXHIBIT 15

In order for the Court to find contempt, the moving party must establish that: (1) a court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply. *Britt Interactive LLC v. A3 Media LLC*, No. 1:16-cv-02884-TWP-DML, 2018 WL 1165862, at *3 (S.D. Ind. Mar. 6, 2018) (citing *U.S. S.E.C. v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010)). A violation of a court order need not be "willful" for the Court to find a party in contempt; instead, a party may be held in contempt if the party "has not been reasonably diligent and energetic in attempting to accomplish what was ordered." *Fletcher Mortg. Co. v. Bass*, 688 F.2d 513, 517 (7th Cir. 1982); *Bailey*, 567 F.3d at 935 (internal quotations omitted).

Here, this Court should enter an Order holding CJT and its counsel in contempt. The Court entered an unambiguous Order requiring CJT to produce documents showing CJT's expenses, earnings, and profits for 2019, 2020, 2021, and 2022. CJT has failed to comply with the Court's Order and failed to engage in reasonable and diligent efforts to comply with the Court's Order.

### 1. The Court's Order sets forth an unambiguous command.

The language of the Court's Order is clear and unambiguous—Produce (1) documents showing CJT's revenues, expenses, and profits in 2019, 2020, 2021, and early 2022; (2) documents and other records relating to lost revenue or other damages suffered by CJT; and (3) documents relating to CJT's subsequent work for Amazon. Dkt. 64 at 3–4. The Court ordered CJT to produce these documents by July 26, 2022, regardless of Amazon's permission to do so. Dkt. 64 at 4. There is no ambiguity in this Order regarding what the Court ordered CJT to produce. Accordingly, there can be no dispute the Order contained an unambiguous command.

### 2. CJT violated the command.

CJT violated the Court's unambiguous command. CJT did not produce any records—Amazon or otherwise—within seven days of the Court's Order. Instead, in direct contravention of the Court's Order stating documents must be produced regardless of Amazon's permission to produce the records, CJT moved to enlarge its time to do no other than obtain Amazon's permission to produce documents. Then, only after Amazon provided its permission, CJT produced documents in response to the Court's Order.

CJT, however, did not produce any documents showing its revenues, expenses, or profits in 2021 and early 2022. To date, CJT has not produce a single document showing how much it has earned, expensed, or profited in 2021 or early 2022. Further, of the documents it has produced in 2019 and 2020, it has not produced sufficient documents to determine how much CJT earned, expensed, and profited from its 2019 and 2020 Barrette work versus its 2019 and 2020 Amazon work.

As of the filing of this Memorandum, and despite two conferences with Magistrate Judge Garcia and two Orders, Barrette still does not have any documents showing when CJT applied to work for Amazon, when CJT accepted any offers to work for Amazon, when CJT began performing work for Amazon, how much work CJT has performed for Amazon, and how much CJT has earned, expensed, and profited from its work for Amazon.

### 3. CJT's violation was significant.

CJT's violation of the Court's Order is significant. CJT is seeking the "pro rata remaining value" of the parties' three-year Agreement—or the amount CJT might have earned under the Agreement from the time Barrette allegedly terminated the Agreement, October 2020, until the three-year Agreement would have expired, January 2022. CJT's claimed damages, however, must

11

EXHIBIT 15

be reduced by the amounts CJT has earned during that period, and Barrette has sought discovery regarding CJT's earnings during that period. CJT, in response, has alleged it mitigated its damages by performing work for Amazon.

Yet, despite these allegations, CJT has failed to produce any documents showing how much it earned and profited from its work for Amazon. CJT's failure to produce these documents precludes Barrette from determining whether CJT has mitigated its damages and by how much CJT's hundreds of thousands of dollars of claimed damages should be reduced by.

4. **CJT failed to make a reasonable and diligent effort to comply.**

Barrette is seeking the most basic documents relating to CJT's damages imaginable—when did CJT apply for other work, did CJT receive any offers, what offers did CJT receive, what offers did CJT accept, what agreements did CJT sign, how much work has CJT performed, and how much has CJT earned, expensed, and profited from that work.

It defies comprehension that CJT cannot produce documents showing when it applied for work with Amazon, what offers CJT received from Amazon, what offers CJT accepted from Amazon, what agreements CJT entered into with Amazon, how much work CJT performed for Amazon, and how much CJT earned, expensed, and profited from its work for Amazon.

The more likely explanation is that CJT intentionally has chosen not to comply with the Court's Order to produce documents to avoid a reduction of its claim for hundreds of thousands of dollars. But, CJT is not permitted to sue Barrette, seek hundreds of thousands of dollars from Barrette, and then refuse to provide basic discovery regarding how much CJT has earned and profited from other work.

During their depositions, CJT's corporate representative, Jett, and Lewis-Jett admitted they received statements regarding payments from Amazon, these statements were reasonably

12

EXHIBIT 15

accessible to them, and they had provided Amazon documents to counsel showing how much revenue CJT earned from Amazon. CJT's counsel even represented to Barrette's counsel he had Amazon payment records reflecting the invoice date, period, service area, and **amount**, and Amazon's DSP U.S. Program Policies state Amazon provided DSPs like CJT with weekly invoices. Yet, when ordered to produce documents showing how much CJT earned, expensed, and profited from its Amazon work, CJT has failed to produce a single invoice showing how much it earned from its Amazon work.

Setting aside the fact that CJT has not produced a single invoice showing how much it earned for the work it performed for Amazon, CJT has not produced any documents of any kind showing how much it earned for the work it performed for Amazon in 2021 or early 2022. It is not possible that a business (regardless of its level of sophistication) operating today and performing services for a large corporation like Amazon cannot produce a single document—balance sheet, income statement, statement of cash flow, invoice, tax return, bank statement, or other financial record of any kind—showing how much it was paid.

**B.     This Court should dismiss CJT's claims with prejudice and order CJT to reimburse Barrette's attorneys' fees and costs.**

Courts have broad discretion to fashion contempt remedies, particularly related to violations of discovery orders. *See* Fed. R. Civ. P. 37(b)(2) (permitting courts to hold parties in contempt, to prohibit parties from supporting or opposing claims or defenses, to dismiss claims, and to enter default judgment); *see also Britt Interactive*, 2018 WL 1165862, at *3 (citing *F.T.C. v. Trudeau*, 579 F.3d 754, 771 (7th Cir. 2009)). The "particular remedy chosen should be 'based on the nature of the harm and the probable effect of alternative sanctions.'" *Britt Interactive*, 2018 WL 1165862, at *3 (quoting *Trudeau*, 579 F.3d at 771). Civil contempt sanctions may serve both coercive and remedial purposes. *Bailey*, 567 F.3d at 933. "Remedial sanctions compensate the

moving party for losses caused by contemptuous conduct, whereas coercive sanctions compel the contemnor into compliance with an existing order." *Bettie Page LLC v. Design Tech. Holding LLC*, No. 1:14-CV-00394-SEB, 2015 WL 1526659, at *8 (S.D. Ind. Apr. 3, 2015) (citing *U.S. v. Dowell*, 257 F.3d 694, 699 (7th Cir. 2001)).

Remedial sanctions impose a fine that is based on evidence of the moving party's actual loss. *Bettie Page LLC*, 2015 WL 1526659 at *8 (citing *S. Suburban Hous. Ctr.*, 186 F.3d 851, 854 (7th Cir. 1999)). They may be awarded even where there is no need to coerce compliance with the order. *See Britt Interactive*, 2018 WL 1165862 at *4 (affirming award of remedies merely intended to compensate for the contemnor's noncompliance with a temporary restraining order). Remedial sanctions may also include awarding the moving party its reasonable attorneys' fees and costs incurred in connection with the violated order. *See id.* at *6 (awarding attorneys' fees and costs in addition to the compensatory remedial sanctions).

Here, CJT's failure to produce any documents showing how much it earned, expensed, and profited from its work from Amazon requires dismissal of CJT's claims against Barrette with prejudice. CJT cannot be permitted to, on the one hand, sue Barrette for hundreds of thousands of dollars and claim it mitigated its damages by performing work for Amazon, but, on the other hand, fail to produce any documents showing how much it earned, expensed, and profited from its work for Amazon. Barrette cannot defend itself, and CJT's claims should be dismissed. *See Avenatti v. Gree USA, Inc.*, No. 2:20-cv-00354-JPH-MJD, 2021 WL 3260348, at *1, *4 (S.D. Ind. July 26, 2021) (recommending (1) a default judgement against party who did not comply with a district court's order and did not offer an explanation for failing to do so and (2) attorneys' fees and costs), *report and recommendation adopted*, 2021 WL 3666540, at *1 (S.D. Ind. Aug. 18, 2021); *see also Annie Oakley Enters. Inc. v. Amazon.com, Inc.*, No. 1:19-cv-01732-JMS-MJD, 2021 WL 3039035,

at *1, *7–8 (S.D. Ind. Mar. 29, 2021) (recommending plaintiff and its counsel who failed to produce revenue information due to "the manner in which Plaintiffs operated their business" be barred from "seeking actual damages of any kind in th[e] case" and required to reimburse defendants' attorneys' fees and costs), *report and recommendation adopted*, 2021 WL 2373779, at *1, *18 (S.D. Ind. June 10, 2021) (affirming award of $86,448.50 in attorneys' fees to defendants and requiring the fees to be paid by plaintiff's counsel).

CJT also should be required to reimburse Barrette's attorneys' fees and costs incurred in seeking documents regarding CJT's alleged work for Amazon. This includes attorneys' fees and costs related to serving discovery requests, conducting follow-up discovery, participating in telephonic discovery conferences, taking an agreed-upon Rule 30(b)(6) deposition, and preparing and prosecuting this motion for contempt. *Am. Petroleum Inst.*, 2016 WL 7092841 at *8 (awarding $50,000 to be paid by the contemnor in order to compensate for the damages sustained as a result of the contempt); *see also Panwar v. Access Therapies, Inc.*, No. 1:12-cv-00619, 2014 WL 820023, at *1, *12 (S.D. Ind. Mar. 3, 2014) (awarding $28,431.46 in attorneys' fees and costs against party who failed to produce documents "despite repeated discovery requests, party conferral, and Court intervention").

CJT's counsel also should be held jointly and severally liable for CJT's reimbursement of Barrette's attorneys' fees and costs. CJT's corporate representative, Jett, and Lewis-Jett all admitted they provided CJT's counsel with documents relating to CJT's work for Amazon prior to their depositions in March 2022, and, on June 24, 2022, CJT's counsel expressly informed Barrette's counsel that CJT's counsel had "Amazon payment records" reflecting the "amount" CJT invoiced Amazon and that these records were "fully responsive to [Barrette's] inquiry regarding compensation [CJT] has received from [its] work with Amazon." Dkt. 73-7 at 2. CJT's counsel's

15

EXHIBIT 15

failure to produce records—whether it be invoices, tax documents, bank statements, or any other financial record of any kind—is contemptible, and this Court should hold CJT's counsel jointly and severally liable for Barrette's attorneys' fees and costs. *See, e.g.*, *Novelty, Inc. v. Mountain View Mktg., Inc.*, No. 1:07-cv-01229-SEB-JMS, 2010 WL 1490416, at *1, *3 (S.D. Ind. Apr. 12, 2010) (ordering plaintiff and its counsel to submit supplemental briefing explaining, "if possible, why all of [plaintiff's] claims in this litigation should not be dismissed with prejudice, [and] why each of them should not be held jointly and severally liable for all Defendants' fees and costs incurred in this litigation").

## CONCLUSION

Barrette respectfully requests the Court enter an Order holding CJT and its counsel in contempt for its violations of this Court's Order, Dkt. 64, and asks this Court to enter an Order holding CJT in contempt of Court, and granting Barrette the following remedies: (1) an order finding CJT and its counsel in contempt of Court; (2) an order dismissing CJT's claims against Barrette with prejudice; (3) an order requiring CJT and its counsel to reimburse Barrette attorneys' fees and costs in seeking documents regarding CJT's alleged work for Amazon and preparing and prosecuting Barrette's motion for contempt; and (4) all other just and appropriate relief.

Respectfully submitted,

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

By: s/ Kevin Roberts
    Todd J. Kaiser, Atty. No. 10846-49
    Kevin Roberts, Atty. No. 33822-49
    300 N. Meridian Street, Suite 2700
    Indianapolis, IN 46204
    Telephone: 317.916.1300
    Facsimile: 317.916.9076
    todd.kaiser@ogletree.com
    kevin.roberts@ogletree.com

    Attorney for Defendant

# CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Benjamin C. Ellis
bellis@hkm.com

Aaron J. Williamson
awilliamson@hkm.com


s/ Kevin Roberts


Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204
Telephone: 317.916.1300
Facsimile: 317.916.9076

52740635.v1-Ogletree