IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CLIFTON JETT TRANSPORT, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:21-cv-01064 |
| | ) |
| BARRETTE OUTDOOR LIVING, INC., | ) |
| | ) |
| Defendant. | ) |

### DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO HOLD PLAINTIFF IN CONTEMPT

Defendant, Barrette Outdoor Living, Inc. ("Barrette"), respectfully submits this Reply in Support of its Motion to Hold Plaintiff in Contempt, Dkt. 72.

### INTRODUCTION

In July, the Court entered a simple order to CJT—Produce documents regarding CJT's damages, including documents showing CJT's revenues, expenses, and profits in 2019, 2020, 2021, and 2022, and documents regarding CJT's subsequent work for Amazon. CJT, however, did not produce, and has not produced, a single document showing its revenues, expenses, or profits in 2021 or 2022. Thus, Barrette filed a contempt motion against CJT, asserting it defies comprehension CJT does not have a single document showing its revenues, expenses, or profits in 2021 or 2022. CJT responded to Barrette's contempt motion, accused Barrette of making baseless accusations of misconduct, chastised Barrette for engaging in rank speculation, and stated CJT and its counsel would not knowingly withhold documents ordered to be produced by the Court.

EXHIBIT 16

But, on August 30, 2022, and September 6, 2022, Amazon responded to Barrette's nonparty subpoena and produced two critical documents to Barrette's defense of CJT's lawsuit. The first document showed CJT entered into a service agreement with Amazon on September 18, 2020—*two days after* CJT emailed Barrette to "get the ball rolling on speaking with someone about the remaining time on [CJT's] contract," and *three days before* Jett participated in a telephone call with Barrette in which Barrette attempted to discuss other "routes" with CJT but CJT stated they should get "legal minds" involved. The second document showed CJT earned almost $1.5 million from its service agreement with Amazon from July 2021 through January 2022—only a portion of the remaining time of the parties' alleged three-year Agreement for Transportation Services ("Agreement"), and almost five times more than CJT allegedly would have earned under the remaining time of the Agreement.

The whole time CJT has been pursuing hundreds of thousands of damages from Barrette related to Barrette's closure of its Indianapolis facility in September 2020, CJT has been concealing the facts that (1) CJT entered into a service agreement with Amazon before it had a telephone call with Barrette regarding the parties' Agreement, and (2) CJT has earned millions of dollars from the service agreement with Amazon. CJT violated a clear and unambiguous order from the Court, and the Court should hold CJT and its counsel in contempt of Court, dismiss CJT's claims against Barrette with prejudice, and require CJT and its counsel to reimburse Barrette's attorneys' fees and costs in seeking documents regarding CJT's alleged work for Amazon and preparing and prosecuting Barrette's contempt motion.

# ARGUMENT

A.   **The Court ordered CJT to produce documents regarding its damages and its work for Amazon, and CJT admittedly has failed to do so.**

On July 19, 2022, the Court issued an Order requiring CJT to produce three categories of documents:

1. Documents showing CJT's revenues, expenses, and profits in 2019, 2020, 2021, and early 2022;

2. Documents and other records relating to lost revenue or other damages suffered by CJT; and

3. Documents relating to CJT's subsequent work for Amazon.

Dkt. 64 at 3.

To date, CJT has not produced any documents regarding its earnings, expenses, and profits from 2021 and 2022. And, in CJT's 26-page response, in which CJT submitted 27 exhibits, CJT did not produce or identify a single document regarding its earnings, expenses, or profits in 2021 or 2022. Dkt. 84 at 1–26.

In fact, in its response, CJT expressly admitted it failed to produce documents regarding its earnings, expenses, and profits in 2021 and 2022:

> CJT has not yet produced documents showing its revenues, expenses, and profits in 2021 and 2022 . . . .

Dkt. 84 at 19.

Not only has CJT expressly admitted it failed to produce documents regarding its earnings, expenses, and profits in 2021 and 2022, CJT also admitted CJT testified, through Jett, that Amazon provided pay statements to CJT and CJT could produce copies of those statements to its counsel:

> Of note, CJT testified, through Clifton Jett, that: . . .

> 5) CJT does not submit invoices to Amazon for payment – Amazon determines payment amounts internally, and provides a statement to CJT, (Ex. 9 at 6, C. Jett Dep. at 88:5 to 14);
>
> 6) CJT could (but had not yet) produced copies of those statements to its counsel, (Ex. 9 at 6, C. Jett Dep. at 88:15 to 23); . . . .

Dkt. 84 at 8.

What is more, CJT even expressly admitted it had documents relating to its earnings, expenses, and profits in 2021 and 2022 it had not produced:

> After multiple additional unsupported assertions, Barrette concluded that the Court should hold CJT in contempt because "[i]t is not possible that a business (regardless of its level of sophistication) operating today and performing services for a large corporation like Amazon cannot produce a single document – balance sheet, income statement, statement of cash flow, tax return, bank statement, or other financial record of any kind – showing how much it was paid." [Dkt. 74 at 12].
>
> Per Section 4.1, *supra* at 18–19, **some documents showing these things do exist**, and they have been produced **(or in the case of 2021 and 2022 information, will be produced).**

Dkt. 84 at 20–21 (emphasis added).

Because CJT has not produced any documents regarding its earnings, expenses, and profits in 2021 and 2022, and because CJT has admitted it has failed to produce such documents—despite the documents existing and CJT having access to the documents—Barrette has provided clear and convincing evidence CJT violated an unambiguous order of the Court.

**B.  CJT has failed to substantially comply with the Court's Order.**

In its response, CJT claims it has substantially complied with the Court's Discovery Conference Order by (1) producing documents showing CJT's revenues, expenses, and profits in 2019 and 2020, documents and other records relating to lost revenue or other damages suffered by CJT, and documents relating to CJT's subsequent work for Amazon; (2) providing sworn

4

EXHIBIT 16

testimony about its finances through 2021; and (3) committing to produce its responsive 2021 and 2022 tax documents upon their completion:

> Following its August 1 supplemental production of documents, CJT has provided (1) documents showing CJT's revenues, expenses, and profits in 2019 and 2020, *e.g.* [JETT002254, 2260]; (2) documents and other records relating to lost revenue or other damages suffered by CJT; and (3) documents relating to CJT's subsequent work for Amazon. [JETT02254, 02252-2307]. CJT has further provided sworn testimony about its finances through 2021 and committed to produce its responsive 2021 and 2022 tax documents upon their completion. (Ex. 9 at 2-18, C. Jett Dep. at 84:19 to 99:3.) Because this constitutes substantial compliance with the Discovery Conference Order [Dkt. 64], Barrette cannot show the "significant" violation necessary to justify an order of contempt.

Dkt. 84 at 18 (footnotes omitted).

But not one of the documents identified by CJT shows revenues, expenses, or profits from 2021 or 2022:

- **Jett2252–2253, 2021 Business Entity Report for CJT:** This document appears to be a 2021 business entity report for CJT. This document has no information about CJT's revenues, expenses, or profits, or its subsequent work for Amazon.

- **Jett2254–2255, 2020 Schedule C to Form 1040 – Profit or Loss from Business (Sole Proprietorship) – Clifton Jett Transport LLC:** This document only shows a portion of CJT's 2020 returns. This document does not distinguish between revenues and expenses for work performed for Barrette versus work performed for CJT.

- **Jett2256, Check from Barrette Customer to CJT:** This document is a check from one of Barrette's customers to CJT for work CJT performed for the customer after Barrette's alleged breach. CJT does not explain why it can produce documents relating to work CJT performed for other shippers but why it cannot produce documents relating to work CJT performed for Amazon.

- **Jett2257, Document Appearing to be Summary of CJT's 2020 Expenses:** This document appears to be a summary of CJT's 2020 expenses. The document does not distinguish between expenses for work performed for Barrette versus work performed for CJT. The document does not show anything about CJT's earnings/profits in 2019, 2020, 2021, or 2022.

- **Jett2258–2260, 2019 Schedules C and SE to Form 1040 (Sole Proprietorship) – No Business Listed:** This document only shows a portion of a 2019 tax return. This document does not show anything about CJT's earnings/profits related to work performed for Amazon in 2020, 2021, or 2022.

- **Jett2261, April 13, 2022, Email from Foley Services to Jett:** This document is an email from permits@foleyservices.com to Jett regarding CJT's DOT registrations. This document has no information about CJT's revenues, expenses, or profits, or its subsequent work for Amazon.

- **Jett2262, DSP Offer Details:** This document does not appear to be an actual offer from Amazon to CJT. This document is undated, unsigned, and provides no information about when CJT applied to work for Amazon, when CJT received an offer from Amazon, when CJT accepted any offer, or how much CJT earned/profited from its Amazon work.

- **Jett2263–2269, DSP Partner Program Agreement:** This document does not appear to be an actual agreement between Amazon and CJT. This document is undated, unsigned, and provides no information about when CJT applied to work for Amazon, when CJT received an offer from Amazon, when CJT accepted any offer, or how much CJT earned/profited from its Amazon work.

- **Jett2270–2279, DSP U.S. Program Policies:** This document is unsigned and undated and provides no information about when CJT applied to work for Amazon, when CJT received an offer from Amazon, when CJT accepted any offer, or how much CJT earned/profited from its Amazon work. <u>Notably, though, the document states Amazon will generate invoices for payments owed to its DSPs and deliver the invoices each week to the DSP. CJT has not produced any of these invoices from Amazon.</u>

- **Jett2280–2303, Printouts of Amazon Payment Disputes from December 2020 to Early 2021:** These documents appear to be printed from Amazon's online portal. The documents show invoice dates, periods, types, and service areas. The documents, however, do not show any invoice amounts, and CJT has not produced any invoices even though it appears CJT may be able to "view" the invoices on the online portal. Dkt. 73-8 at 2–25.

- **Jett2304–2305, 2020 Schedule C to Form 1040 – Profit or Loss from Business (Sole Proprietorship) – Clifton V Jett:** This document only shows a portion of Jett's 2020 returns. This document does not distinguish between revenue and expenses for work performed for Barrette versus work performed for Amazon.

- **Jett2306–2307, 2020 Schedule C to Form 1040 – Profit or Loss from Business (Sole Proprietorship) – Clifton Jett Transport LLC:** This document only shows a portion of CJT's 2020 returns. This document does not distinguish between revenues and expenses for work performed for Barrette versus work performed for Amazon. This document was previously produced.

Further, Jett's sworn testimony regarding its finances through 2021 and its commitment to producing responsive 2021 and 2022 tax documents do not constitute substantial compliance with the Court's Discovery Conference Order. With respect to CJT's testimony regarding its 2021 finances, Jett, as CJT's corporate representative, testified CJT earned between $10,000 and $25,000 from its Amazon work in 2020 and $250,000 from its Amazon work in 2021. Dkt. 89-1 at 7 (CJT Dep. Vol. II at 309:5–311:7). On the same day, Jett, in his individual capacity, testified CJT earned between $30,000 and $40,000 from its Amazon work in 2020, and $400,000 to $500,000 from its Amazon work in 2021. Dkt. 73-5 at 5 (Jett Dep. 85:1–86:2). This testimony is so wildly inconsistent Barrette cannot rely on it. Further, even if the testimony was not so wildly inconsistent, CJT's testimony would not be a substitute for CJT producing actual documents in its possession, custody, or control regarding CJT's earnings, expenses, and profits.

Further, CJT's commitment to producing responsive 2021 and 2022 tax documents upon their completion does not constitute compliance with the Court's Discovery Conference Order. The Court's Discovery Conference Order does not order CJT to produce its tax returns. The Discovery Conference Order orders CJT to produce documents regarding its earnings, expenses, and profits in 2019, 2020, 2021, and 2022. CJT has not produced any documents regarding its earnings in 2021 and 2022.

Importantly, tax returns do not materialize out of thin air. Returns are based on documents and information regarding a company's earnings, expenses, and profits. CJT already has earned money, expensed money, and profited (or lost) money in 2021 and 2022. It is inconceivable CJT

does not have any documents or records of any kind in its possession, custody, or control showing how much CJT has earned, expensed, and profited (or lost) in 2021 or 2022. That would mean that—other than CJT's tax returns which will materialize out of thin air without any underlying documents or records of CJT's earnings, expenses, and profits sometime in the future—CJT does not have any documents in its possession, custody, or control showing how much money CJT has been paid, expensed, and profited (or lost) in 2021 or 2022—not even one bank statement (redacted or otherwise) showing a deposit of money from Amazon. Because CJT has failed to produce a single document relating to its earnings, expenses, and profits from 2021 and 2022, CJT has failed to substantially comply with the Court's Discovery Conference Order.

**C.   Barrette's rhetoric regarding CJT's failure to comply with the Court's Discovery Conference Order is not overblown, exaggerated, or demonstrably false.**

CJT claims Barrette's rhetoric regarding CJT's compliance with the Court's Discovery Conference Order is overblown, exaggerated, and demonstrably false. Dkt. 84 at 2. In an attempt to show CJT has complied with the Court's Order and Barrette's rhetoric is overblown, CJT directs the Court to Jett2254. Dkt. 84 at 19. This is CJT's two-page IRS Schedule C for 2020. This document does not contain any information regarding CJT's 2021 or 2022 revenues, expenses, or profits. Dkt. 89-2 at 2–3. Nor does this document provide sufficient information to determine CJT's revenues, expenses, and profits for 2020—the document does not distinguish between revenue, expenses, and profits related to CJT's work for Barrette, and revenue, expenses, and profits related to CJT's work for Amazon. *Id.*

The fact of the matter is CJT—after more than one year of litigation, multiple discovery requests, letters, conferences, depositions, and Court Orders—has not produced a single document showing its earnings, expenses, and profits from 2021 and 2022. Nor has it produced sufficient

documents related to its 2020 earnings, expenses, and profits or its work for Amazon. Barrette's rhetoric is not overblown, exaggerated, or demonstrably false.

D. **CJT has not made reasonable and diligent efforts to comply with the Court's Orders—instead, it has done everything it can to avoid producing documents regarding its damages and its Amazon work.**

Barrette has been seeking documents and information regarding CJT's damages since September 9, 2021, more than one year ago. To date, and despite two Court Orders, CJT still has not produced a single document showing its 2021 or 2022 earnings, expenses, or profits. The documents CJT has produced, which are detailed in Barrette's memorandum in support of its contempt motion, do not provide any information about CJT's earnings, expenses, or profits in 2021 or 2022. *See* Dkt. 74 at 4–5, 8–9.

CJT has not made a reasonable and diligent effort to Comply with the Court's Discovery Conference Order, and CJT's most recent production of Amazon payment printouts is a perfect example. Dkt. 73-8 at 1–25. These payment printouts do not provide any information about how much money CJT earned, expensed, or profited related to its work for Amazon. These documents do not comply with the Court's Discovery Conference Order, and how CJT and its counsel could have believed these documents constitute a reasonable and diligent effort to comply with the Court's Discovery Conference Order—let alone compliance with the Court's Discovery Conference Order—is inexplicable.

Rather, the production of these payment printouts, which contain no relevant information at all, is just another attempt by CJT to do everything it can to not comply with the Court's Discovery Conference Order. First, CJT claimed it would not produce documents because they were not relevant—the Court held the documents were relevant. Dkt. 74 at 5. Then, CJT claimed it would not produce documents because of a confidentiality provision in an agreement with

Amazon—the Court held the documents could be produced regardless of any confidentiality provision. Dkt. 74 at 6–7. Now, CJT claims it cannot produce any records until after it files its tax returns. *See, e.g.*, Dkt. 84 at 2, 18.

This Court should reject CJT's latest claims. The Discovery Conference Order orders CJT to produce documents showings its 2021 and early 2022 earnings, expenses, and profits. CJT already has earned money, expensed money, and profited (or lost) money, and it is inconceivable CJT does not have any documents or records in its possession, custody, or control showing how much it has earned, expensed, and profited (or lost).

The Court also should reject CJT's other claim that Barrette is making "ever-growing demands for more documents, unmoored from any specific discovery request." Dkt. 84 at 22. Barrette's requests outline specific, narrow categories of documents and information it is seeking relating to CJT's earnings, expenses, and profits, as well as CJT's work for Amazon—both of which the Court ordered CJT to produce. This includes documents showing when CJT applied for work from Amazon, when and what offers CJT received from Amazon, when and what offers CJT accepted from Amazon, what agreements CJT signed with Amazon, how much work CJT performed for Amazon, and how much CJT earned, expensed, and profited from its Amazon work.

The Court also should reject CJT's offer to produce its principals "to determine what additional specific documents (if any) are within its possession, custody, and control . . . ." Dkt. 84 at 23. It is not the Court's job to determine the specific documents in CJT's possession, custody, and control and order production of those documents. The Court did its job. It heard arguments on the discovery issues between the parties—on two separate occasions—and it ordered CJT to produce documents regarding its damages, its earnings, expenses, and profits, and its work for

Amazon—on two separate occasions. It is the job of CJT and its counsel to comply with the Court's Orders.[1]

CJT admittedly has failed to produce documents and should be held in contempt, and its claims against Barrette should be dismissed. CJT sued Barrette claiming hundreds of thousands of dollars in damages, and CJT has fought tooth and nail to prevent Barrette from discovering relevant documents and information relating to CJT's damages, precluding Barrette from defending itself.

**E.     CJT's failure to produce documents regarding its damages and its work for Amazon is significant.**

In its response, CJT continues to suggest the documents and information Barrette seeks are not relevant to the parties' claims and defenses. *See, e.g.*, Dkt. 84 at 10. This suggestion, however, is completely misplaced. The Court already has considered CJT's argument the documents are not relevant on two occasions, rejected these arguments, and ordered CJT to produce documents regarding its damages and its earnings, expenses, and profits in 2019, 2020, 2021, and 2022. Dkt. 53 at 1 (specifically holding documents relating to CJT's damages "discoverable"); Dkt. 64 at 2 ("Under the broad discovery rules articulated above, the information Barrette seeks from Amazon is relevant because it is reasonably calculated to lead to admissible evidence that might establish either an element of Defendant's defenses or Plaintiff's claim.").[2]

---

[1] This past Sunday, CJT's counsel moved the Court for an evidentiary hearing to "clearly establish what documents [CJT] has in its possession, custody, or control . . . ." Dkt. 87 at 1. Nowhere in the motion, however, does CJT describe why it could not have clearly established what documents CJT has in its possession, custody, or control in its response to Barrette's contempt motion. *See* Dkt. 87 at 1–3. CJT's response is 26 pages and contains 27 exhibits. *See* Dkt. 84. The information to clearly establish what documents it has is in its possession, custody, and control is entirely within CJT's control, and CJT could have clearly established the documents in its possession, custody, or control in its response—CJT chose not do so. *See* Dkt. 84 at 1–26. CJT likely chose not to do so because, in doing so, CJT would have had to explain why it has documents in its possession, custody, and control that it has not produced in response to the Court's Discovery Conference Order.

[2] CJT's continued assertion that Barrette has not pleaded a mitigation-of-damages defense is incorrect. Dkt. 84 at 4. In its Answer, Barrette specifically asserted CJT's claims were barred or must be reduced by the doctrines of set off and offset. Dkt. No. 14 at 6; *Geller v. Kinney*, 980 N.E.2d 390, 399 (Ind. Ct. App. 2012) ("[T]he non-breaching party is not entitled to be placed in a better position than he would have been if the contract had not been broken. Indeed, the non-breaching party, as a general rule, must mitigate his damages . . . . Where a party does mitigate its damages,

The Court already has ruled the documents are within the liberal scope of discovery, and CJT's continued violation of the Court's Orders is contemptible. The issue before the Court is not relevance—it is compliance. CJT has not complied—substantially or otherwise—with the Court's Orders, and CJT's withholding of these documents prevents the parties, as well as the Court, from assessing the parties' claims and defenses and is significant.

**F.     CJT's failure to produce documents is calculated and intentional, and this Court should hold CJT and its counsel liable for Barrette's attorneys' fees and costs.**

In Barrette's memorandum in support of contempt motion, Barrette argued it defied comprehension CJT could not produce documents showing when it applied for work with Amazon, what offers CJT received from Amazon, what offers CJT accepted from Amazon, what agreements CJT entered into with Amazon, how much work CJT performed for Amazon, and how much CJT earned, expensed, and profited from its work for Amazon and that the likely explanation is CJT intentionally has chosen not to comply with the Court's Order to produce documents to avoid a reduction of its claims for hundreds of thousands of dollars. Dkt. 74 at 12. In its response, CJT accused Barrette of making "baseless accusations" of misconduct, chastised Barrette for engaging in rank "speculation," and stated CJT and its counsel "would not knowingly withhold documents ordered to be produced by the Court." Dkt. 84 at 2–3, 24.

But, on August 30, 2022, and September 6, 2022, Amazon began a "rolling" production of documents in response to Barrette's nonparty subpoena. Even though Amazon's "rolling" production has been limited to only a small subset of documents and is still ongoing, two of the

---

the breaching party is entitled to set off the amount of the damages mitigated."). Further, CJT's assertion that liquidated damages are not subject to a mitigation of affirmative defense is incorrect. Dkt. 84 at 10. If a court finds a liquidated-damages provision unenforceable, then a plaintiff's recovery is limited to its actual damages, which may be offset by the plaintiff's mitigation efforts. *Am. Consulting, Inc. v. Hannum Wagle & Cline Eng'g, Inc.*, 136 N.E.3d 208, 214 (Ind. 2019).

documents produced by Amazon confirmed Barrette's belief that relevant documents and information existed and had not been produced.

The first document was a spreadsheet showing extracted data regarding CJT's relationship with Amazon. Dkt. 89-3 at 2. The spreadsheet showed the date CJT entered into a service agreement with Amazon—the "serviceagreement_date"—was September 18, 2020. *Id.* CJT entered into this agreement with Amazon <u>two days after</u> Jett emailed Barrette's Indianapolis Branch Manager Mark Hicks and stated Jett wanted to "get the ball rolling on speaking with someone about the remaining time on my contract," Dkt. 89-4 at 2, and <u>three days before</u> Jett participated in a telephone call with Barrette's Vice President of Transportation John Boyle in which Boyle attempted to discuss other "routes" with Jett and his wife but Jett stated they should get "legal minds" involved, Dkt. 89-1 at 4–5 (CJT Dep. Vol. II 252:14–253:24). This first document explains why CJT refused to discuss continuing to provide Barrette with transportation services during the telephone call with Boyle on September 21, 2020, why CJT wanted to get "legal minds" involved, why CJT served a demand letter on Barrette just seven days later on September 28, 2020, and why CJT did not respond to or accept Barrette's requests for transportation services on October 26, 2020, or December 2, 2020—CJT already had begun providing transportation services to Amazon. Dkt. 89-3 at 2.

The second document was a spreadsheet of "CJT Invoices to Amazon Logistics, Inc." dated July 31, 2021, through January 29, 2022. Dkt. 89-5 at 2–3. The spreadsheet shows the invoice number, invoice date, delivery period, the total amount earned, other amounts earned, prepayment amounts, and reconciliation amounts for prior months. *Id.* In total, the spreadsheet suggests CJT earned almost $1.5 million from its Amazon work from July 31, 2021, through January 29, 2021. *Id.* This is almost five times more than CJT claims it would have earned under the parties'

13

EXHIBIT 16

Agreement, and this does not include amounts CJT earned from the start of the parties' relationship, on or about September 18, 2020, through July 30, 2021.

Considered together and in context with other case documents, the two documents Barrette was able to extract from Amazon show that, upon learning Barrette would close its Indianapolis facility, CJT entered into a services agreement with Amazon on September 18, 2020, promptly refused to discuss providing transportation services to Barrette three days later on September 21, 2020, sent a litigation demand letter to Barrette seven days later on September 28, 2020, refused to respond to Barrette's requests for transportation services on October 26, 2020, and December 2, 2020, and earned millions of dollars from its service agreement with Amazon. In other words, the limited documents show that—for the entire time CJT has been claiming Barrette terminated the parties' Agreement—CJT has been concealing the fact CJT signed a services agreement with Amazon two days before CJT refused to discuss other "routes" with Barrette and CJT has earned millions of dollars as a result of this agreement with Amazon.

It is no wonder CJT and its counsel have fought—and continue to fight—tooth and nail to preclude Barrette from discovering documents and information regarding its damages and its work for Amazon. CJT has not suffered any damages as a result of Barrette's closure of its Indianapolis facility. Rather, prior to any discussion with Barrette, CJT entered into a service agreement with Amazon, demanded hundreds of thousands of dollars from Barrette, and then earned millions of dollars from Amazon—all the while concealing these facts from Barrette.

CJT's continued attempts to extract hundreds of thousands of dollars from Barrette and subject Barrette to additional attorneys' fees and costs should be put to a stop. This Court should hold CJT and its counsel in contempt, dismiss CJT's claims against Barrette, and order CJT and its counsel to reimburse Barrette's attorneys' fees and costs.

## CONCLUSION

Barrette respectfully requests the Court enter an Order holding CJT and its counsel in contempt for its violations of this Court's Order, Dkt. 64, and asks this Court to enter an Order holding CJT in contempt of Court, and granting Barrette the following remedies: (1) an order finding CJT and its counsel in contempt of Court; (2) an order dismissing CJT's claims against Barrette with prejudice; (3) an order requiring CJT and its counsel to reimburse Barrette attorneys' fees and costs in seeking documents regarding CJT's alleged work for Amazon and preparing and prosecuting Barrette's motion for contempt; and (4) all other just and appropriate relief.

Respectfully submitted,

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

By: s/ Kevin Roberts
 Todd J. Kaiser, Atty. No. 10846-49
 Kevin Roberts, Atty. No. 33822-49
 300 N. Meridian Street, Suite 2700
 Indianapolis, IN 46204
 Telephone: 317.916.1300
 Facsimile: 317.916.9076
 todd.kaiser@ogletree.com
 kevin.roberts@ogletree.com

 Attorney for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Benjamin C. Ellis
bellis@hkm.com

Aaron J. Williamson
awilliamson@hkm.com


s/ Kevin Roberts


Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
300 N. Meridian Street, Suite 2700
Indianapolis, IN  46204
Telephone:  317.916.1300
Facsimile:  317.916.9076