# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CLIFTON JETT TRANSPORT, INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:21-cv-01064-JPH-MKK |
| | ) | |
| BARRETTE OUTDOOR LIVING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION

Even after Defendant, Barrette Outdoor Living, Inc. ("Barrette"), filed its Motion to Hold Plaintiff in Contempt and its Memorandum in Support thereof (the "Motion for Contempt") on August 23, 2022, Dkt. 72-74, Plaintiff Clifton Jett Transport ("CJT") continued to thwart Barrette's discovery efforts and violate the Court's orders. It was not until after Magistrate Judge Pryor issued her December 7, 2022, Order,[1] in which she correctly found that CJT should be found in contempt (the "Magistrate Judge's Order"), Dkt. 106, that CJT began to make a meaningful, albeit still meager, effort to comply with Barrette's document requests and the Court's previous orders addressing CJT's deficient responses and production.

Now, hoping to escape a contempt finding for the obstacles, delay, and confusion it created during discovery, CJT has filed Plaintiff's Objections to Magistrate's Report and Recommendation ("CJT's Objections"), Dkt. 114. CJT's Objections largely rehash its Response in Opposition to

---

[1] The Court designated the assigned Magistrate Judge, which was Judge Pryor at the relevant time, to enter a final report and recommendation on the appropriate disposition of Barrette's Motion for Contempt. Dkt. 86. Judge Pryor's report and recommendation was titled "Order." Dkt. 106. The Court construed Judge Pryor's order as a report and recommendation. Dkt. 113. For consistency with Judge Pryor's opinion, Barrette will refer to it as the "Magistrate Judge's Order."

EXHIBIT 18

Defendant's Motion to Hold Plaintiff in Contempt, Dkt. 84, and is unsupported by case law or other legal authority. CJT's Objections fail to establish (or even credibly or coherently argue) that the Magistrate Judge's Order is clearly erroneous or contrary to law. Rather, CJT contends that it should not be held in contempt or sanctioned because it "has done its best to produce the documents ordered by the Court" and because it "substantially complied with and has been diligent in complying with" the Court's orders. Dkt. 114 at 3, 14. Neither of those assertions is accurate. To the extent that CJT has complied with the Court's orders, its compliance has been dilatory at best and contumacious at worst. Indeed, much of CJT's compliance with the Court's orders (again, to the extent that it has complied at all) took place well outside of the timeframe that the Court ordered. CJT's attempt to establish that it has "done the best it could" is beyond insufficient to overturn the Magistrate Judge's Order. CJT's self-proclaimed "best" simply is not good enough to avoid a contempt finding and the concomitant consequences and penalties.

As Barrette established in its Motion for Contempt, the Court issued an unambiguous order requiring production of documents showing CJT's expenses, earnings, and profits for 2019 through 2022; CJT violated that order; CJT's violation was significant; and CJT failed to make reasonable and diligent efforts to comply with the Court's order. In short, CJT has prevented and continues to prevent, Barrette from meaningfully and fully defending itself in this lawsuit. CJT has not demonstrated clear error in the Magistrate Judge's Order, as it must do to avoid contempt.  For these reasons, and for all the reasons addressed in Barrette's prior briefing to the Magistrate Judge, Barrette respectfully requests that the Court overrule CJT's objections, adopt the Magistrate Judge's Order, and hold CJT in contempt.

EXHIBIT 18

## Relevant Factual and Procedural History

### *CJT's Insufficient Discovery Responses*

On or about March 22, 2021, CJT sued Barrette for breach of contract, alleging Barrette breached the parties' Agreement, CJT has "lost revenue and suffered other damages as a result of [Barrette's] breach of the Agreement," and "Paragraph 9 of the Agreement says if [Barrette] terminates the Agreement without cause, [Barrette] has to pay CJT the pro rata remaining value of the term of the Agreement." Dkt. 1-3 at ¶¶ 17, 19-23; Dkt. 106 at 1-2.

On September 9, 2021, Barrette served written discovery on CJT to determine CJT's alleged damages and its mitigation efforts, and CJT stated it had "performed work for Amazon beginning in November 2020." Dkt. 73-1 at 11; Dkt. 106 at 2.

Through numerous communications detailing CJT's discovery deficiencies and multiple telephonic discovery conferences discussing those deficiencies, Barrette sought to discover additional information and documents relating to CJT's "work for Amazon," including information and documents showing when CJT sought work from Amazon (e.g., CJT's applications to perform work for Amazon), when CJT received an offer to perform work for Amazon (e.g., Amazon's offer to CJT), when CJT agreed to perform work for Amazon (e.g., CJT's agreement with Amazon), what work CJT has performed for Amazon, and how much CJT has earned and profited from its work for Amazon. *See generally* Dkt. 74.

Because CJT did not provide any information or documents regarding the work it performed for Amazon and how much it had earned and profited from that work, Barrette noticed a Rule 30(b)(6) deposition of CJT to obtain that information and documents regarding CJT's work for Amazon. After multiple discussions between counsel for Barrette and CJT, Barrette served on CJT amended Rule 30(b)(6) deposition notice with agreed-upon topics of examination specifically

EXHIBIT 18

commanding production of information and documents regarding CJT's damages and its Amazon work. Dkt. 73-2 at 6; Dkt. 106 at 2-3.

On March 3, 2022, and March 4, 2022, Barrette deposed CJT's corporate representative, Clifton Jett ("Jett"), and Jett's wife, Gwennetta Lewis-Jett ("Lewis-Jett"). Dkt. 73-5, 73-6. Ignoring the agreed Rule 30(b)(6) topics, CJT's corporate representative did not bring *any* documents relating to CJT's work for Amazon and did not bring sufficient documents relating to its alleged damages. *Id*. Specifically, in its tepid response to Barrette's amended and agreed-upon Rule 30(b)(6) deposition notice requesting documents relating to CJT's damages and its work for Amazon, CJT produced only 23 pages of documents, none of which contain any information about how much CJT earned/profited from its work for Amazon or how or if it mitigated its damages in 2020, 2021, or 2022. Dkt. 74 at 4-5.

Despite failing to produce any documents relating to the work CJT performed for Amazon, CJT's corporate representative, Jett, and Lewis-Jett both admitted they had access to and/or had provided information and documents to CJT's counsel regarding CJT's work for Amazon *before* the depositions on March 3, 2022, and March 4, 2022. Dkt. 75 at 5; Dkt. 106 at 3.

### *The Court Orders CJT to Comply With Outstanding Discovery Requests*

Because CJT's refused to produce any documents showing how much CJT earned/profited from its work for Amazon, Barrette had no option but to serve a nonparty request on Amazon to obtain information and documents regarding CJT's work for Amazon. Dkt. 74 at 5. CJT's counsel informed Barrette's counsel that CJT would not voluntarily agree to produce any Amazon documents and that CJT intended to move to quash Barrette's nonparty request. As a result of this stalemate, on May 11, 2022, the parties participated in a telephonic discovery conference with Magistrate Judge Garcia. Dkt. 53 at 2; Dkt. 106 at 3. Following the parties' conference, the Court

issued an Order (the "Court's May 23 Order") requiring CJT to produce, among other documents, documents relating to CJT's damages and its work for Amazon on an "expedited" basis and "as soon as reasonably possible." Dkt. 53 at 1-2; Dkt. 106 at 3.

CJT ignored Judge Garcia's order and failed to produce documents relating to its damages or its work for Amazon. This malfeasance required the parties to participate in a second telephonic discovery conference with Judge Garcia on July 14, 2022. Dkt. 64 at 3; Dkt. 106 at 4. During the telephonic conference, CJT's counsel indicated he was *in possession of documents relating to CJT's work for Amazon and had the ability to produce the documents the same day*.

On July 19, 2022, the Court issued an Order (the "Court's July 19 Order") to produce *within seven days* three categories of documents: (1) documents showing CJT's revenues, expenses, and profits in 2019, 2020, 2021, and early 2022; (2) documents and other records relating to lost revenue or other damages suffered by CJT; and (3) documents relating to CJT's subsequent work for Amazon. Dkt. 64 at 3; Dkt. 106 at 4. As the Court had made clear to the parties' counsel, the Court again specifically ordered CJT to produce documents relating to CJT's work for Amazon *without securing Amazon's permission*. Dkt. 64 at 2-3; Dkt. 106 at 4.

On August 1, 2022, CJT produced 45 pages of documents to Barrette, and CJT informed the Court it had "produced the documents subject to the Court's *Order* [Dkt. 53], see also [Dkt. 64]." Dkt. 70 at ¶¶ 1-14. Within those 45 pages, however, there is no information about *when* CJT applied to work for Amazon, *when* CJT received an offer from Amazon, *when* CJT accepted any offer, or *how much* CJT earned/profited from its Amazon work. Dkt. 74 at 8-9. In fact, CJT had not produced a single document after almost one year of discovery showing how much CJT earned from its work for Amazon in 2021 or 2022.

## *Barrette Files its Motion for Contempt*

On August 23, 2022, after nearly a year of persistent and unsuccessful attempts to obtain discovery to which Barrette is entitled regarding CJT's alleged damages, mitigation efforts, and work for Amazon, Barrette finally moved to hold CJT and its counsel in contempt for violation of the Court's Order, Dkt. 64. Dkt. 72 at 1-2. In support of its Motion for Contempt, Barrette established that CJT had not produced a single document showing how much money it earned from its work for Amazon in 2021 or 2022 and had not produced sufficient documents for Barrette to determine how much money CJT expensed, earned and profited from its Amazon work in 2020. This failure by CJT to fulfill its discovery obligation and this contempt by CJT of several court Orders deprives Barrette of the opportunity fully to defend itself in the lawsuit. Dkt. 74 at 1-2.

On August 30, 2022, and September 6, 2022, Amazon—not CJT—began a "rolling" production of documents in response to Barrette's nonparty subpoena. Dkt. 90 at 12-13. Although Amazon's "rolling" production included only a small subset of documents at the time, two of the documents produced by Amazon confirmed Barrette's belief that relevant documents and information existed and intentionally had not been produced. Dkt. 90 at 12-13.

The first document was a spreadsheet showing extracted data regarding CJT's relationship with Amazon. Dkt. 89-3 at 2. The spreadsheet showed September 18, 2020, as the date CJT entered into a service agreement with Amazon—a mere two days after Jett emailed Barrette's Indianapolis Branch Manager Mark Hicks to inform him that Jett wanted to "get the ball rolling on speaking with someone about the remaining time on my contract," Dkt. 89-4 at 2, and just three days before Jett participated in a telephone call with Barrette's Vice President of Transportation John Boyle during which Boyle attempted to discuss other "routes" with Jett and his wife. Rather than confer

EXHIBIT 18

about securing other routes for CJT, Jett instead preferred to get "legal minds" involved, Dkt. 89-1 at 4-5 (CJT Dep. Vol. II 252:14-253:24).

This first spreadsheet explains why, during the telephone call with Boyle on September 21, 2020, CJT refused to discuss opportunities to continue to provide Barrette with transportation services; why CJT wanted to get "legal minds" involved, why CJT served a demand letter on Barrette just seven days later on September 28, 2020, and why CJT did not respond to or accept Barrette's requests for transportation services on October 26, 2020, or December 2, 2020—CJT already had begun providing transportation services to Amazon. Dkt. 89-3 at 2.

The second document was a spreadsheet of "CJT Invoices to Amazon Logistics, Inc." dated July 31, 2021, through January 29, 2022. Dkt. 89-5 at 2-3. The spreadsheet shows the invoice number, invoice date, delivery period, the total amount earned, other amounts earned, prepayment amounts, and reconciliation amounts for prior months. *Id.* In total, the spreadsheet suggests CJT earned <u>almost $1.5 million</u> from its Amazon work from July 31, 2021, through January 29, 2021. *Id.* This is almost five times more than CJT claims it would have earned under its Agreement with Barrette, exclusive of amounts CJT earned from the start of CJT and Amazon's relationship, on or about September 18, 2020, through July 30, 2021. Dkt. 90 at 13-14.

After Barrette filed its Motion for Contempt, but before the Magistrate Judge issued her Order, CJT continued to withhold information and records relating to its Amazon work and its revenues, expenses, and profits. On October 27, 2022, for example, in the parties' last exchanges regarding CJT's compliance with the Court's Orders before the Magistrate Judge issued her Order, Barrette's counsel emailed CJT's counsel regarding CJT's production of its 2021 and 2022 tax documents, which CJT previously promised the Court it would produce once their taxes were completed, Dkt. 84 at 18. CJT's counsel responded on November 1, 2022, by producing ***two***

EXHIBIT 18

*documents* totaling *three pages*, which purportedly included "Amazon's confirmation that it did not issue tax documents . . . to CJT" and CJT's "2021 Schedule C" and stated "[m]y understanding is that our production of documents is complete - please let us know by the end of this week if you disagree." Dkt. 112 at 12.

On November 4, 2022, Barrette's counsel did just that, advising CJT's counsel that its production was not complete or compliant with the Court's Order and requesting CJT's counsel's availability for a telephonic conference. Dkt. 112 at 12. Instead of producing complete copies of the promised tax returns or offering his availability for a telephonic conference, CJT's counsel demanded Barrette's counsel "specifically identify the documents or information you believe exist and that you lack at this point." *Id.* Barrette's counsel responded, reiterating that Barrette wanted CJT to comply with the Court's Order, and specifically identified how CJT's production did not comply with the Court's Order. Dkt. 112 at 12. For the second time, instead of producing complete copies of the promised tax returns or providing availability for a telephonic conference, CJT's counsel refused to supplement its production and stated, "any further supplementation will only serve to generate more follow-on requests." Dkt. 112-2 at 1-7.

### Magistrate Judge Finds That CJT Should Be Held in Contempt

On December 7, 2022, Judge Pryor issued an order holding CJT in contempt and asking Barrette to submit its petition fees and costs. Dkt. 106. On December 14, 2022, CJT's counsel emailed Barrette's counsel and informed Barrette's counsel CJT's counsel was meeting with "Jett" on December 22, 2022 "to determine what additional documents exists in CJT's possession, custody, or control that have been ordered to be produced" and would "follow up with [CJT's counsel] again after that meeting." Dkt. 112-3 at 1.

EXHIBIT 18

On December 30, 2022, CJT's counsel emailed Barrette's counsel and produced more than 200 pages of additional emails allegedly "relating to the formation period between CJT and Amazon." Dkt. 112-4 at 1. This supplemental production included, among other relevant documents, Amazon's offer to CJT to join Amazon's Delivery Service Partner program dated September 11, 2020—*five days before* CJT emailed Barrette to "get the ball rolling on speaking with someone about the remaining time on [CJT's] contract," and *10 days before* Jett participated in a telephone call with Boyle in which he offered to discuss other "routes" with Jett, an offer Jett refused by stating they should get "legal minds" involved. *Compare* Dkt. 112-5 at 1, with Dkt. 89-4 at 2, and Dkt. 89-1 at 4-5 (CJT Dep. Vol. II 252:14-253:24).

Although this supplemental production also included emails from "Amazon Payee Central" to Jett, Dkt. 112-6 at 1, CJT's counsel provided no explanation as to why these emails were not previously produced. Dkt. 112-4 at 1. This omission was especially suspect because when CJT previously had produced emails involving the same two entities—"Amazon Payee Central" and Jett—on November 1, 2022, its counsel stated his "understanding is that our production of documents is complete." *See* Dkt. 112-6 at 1-2 (produced on December 30, 2022); Dkt. 112-7 at 1 (produced on November 1, 2022).

On January 6, 2022, in compliance with the Magistrate Judge's Order, Dkt. 106 at 10, Barrette filed its Detailed and Verified Itemization of Costs and Attorneys' Fees, detailing $94,686.05 in attorneys' fees and costs that Barrette incurred and likely will incur as a result of CJT's failure to produce information and documents regarding its work for Amazon and its revenues, expenses, and profits. Dkt. 112.

Since January 6, 2023, CJT continues to violate the Court's Order. On January 16, 2023, January 23, 2023, and January 25, 2023, CJT produced nearly 2,300 previously unproduced and

EXHIBIT 18

heavily redacted financial and tax records. The extent of the redactions is preventing Barrette from assessing whether the documents contain relevant and material facts.

### Standard of Review

When a non-dispositive pretrial matter is referred to a magistrate judge to hear and decide, the magistrate judge must, when appropriate, issue a written order stating the decision. Fed. R. Civ. P. 72(a). A party may serve and file objections to the magistrate judge's order. *Id*. The district judge must consider timely objections "and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id*. "Clear error is an extremely deferential standard of review that will be found only when the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Jones v. Dollar Tree Inc.*, No. 1:22-cv-01395-JPH-TAB, 2023 WL 403971, at *1 (S.D. Ind. Jan. 25, 2023) (internal quotation marks and citation omitted). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Parker v. Amazon.com.indc LLC*, No. 1:17-cv-04404-JMS-MJD, 2018 WL 5306874, at *4 (S.D. Ind. Oct. 26, 2018) (internal quotation marks and citation omitted).

### Argument

**A. This Court should adopt the Magistrate Judge's Order and hold CJT in contempt of Court.**

This Court has discretion to enter a finding of civil contempt and maintains the "inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966) (citations omitted); *Am. Petroleum Inst. v. Bullseye Auto. Prod. Inc.*, No. 1:13-cv-1112-TWP-DKL, 2016 WL 7092841, at *5 (S.D. Ind. Dec. 5, 2016). "With respect to civil contempt proceedings, '[j]udicial sanctions . . . may, in a proper case, be employed for either or both of two purposes; to coerce [a party] into compliance with the court's order, and

to compensate the complainant for losses sustained.'" *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947); *see also Bailey v. Roob*, 567 F.3d 930, 933 (7th Cir. 2009).

For the Court to find a party in contempt: "[T]he moving party must establish by clear and convincing evidence that (1) a court order sets forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply." *United States Sec. & Exch. Comm'n v. Hyatt*, 621 F.3d 687, 692 (7th Cir. 2010). A violation of a court order need not be "willful" for the Court to find a party in contempt; instead, a party may be held in contempt if the party "has not been reasonably diligent and energetic in attempting to accomplish what was ordered." *Am. Fletcher Mortg. Co. v. Bass*, 688 F.2d 513, 517 (7th Cir. 1982); *Bailey*, 567 F.3d at 935 (internal quotations omitted). As detailed above, CJT's conduct in responding to discovery and failing to comply with Court orders was far from "reasonably diligent and energetic" and, in some instances, apparently willful. Thus, a contempt finding is fully justified.

Here, the Court must overrule CJT's Objections and adopt the Magistrate Judge's Order holding CJT in contempt. As established in Barrette's Motion for Contempt and discussed below, the Court entered an unambiguous order requiring CJT to produce documents showing CJT's expenses, earnings, and profits for 2019, 2020, 2021, and 2022. CJT violated that order, its violation was significant, and it failed to engage in reasonable and diligent efforts to comply with the Court's Order. Equally important here is that CJT's Objections fail to establish that the Magistrate Judge's Order, which found that CJT should be held in contempt, is clearly erroneous or contrary to law. As recently as within the past two weeks, this Court overruled a party's objection to a magistrate judge's order because the magistrate judge "did not clearly err" in striking

11

EXHIBIT 18

the party's amended complaint, which was untimely filed in contravention of the case deadlines, without the consent of the opposing party, and without leave of the Court. *See Jones,* No. 1:22-cv-01395-JPH-TAB, 2023 WL 403971, at *1. In other words, the party could not establish that the magistrate judge's order was clearly erroneous or contrary to law and, accordingly, the district court overruled the party's objection. Similarly, here, because CJT cannot establish that Magistrate Judge Pryor's Order is clearly erroneous or contrary to law, the district court must overrule CJT's Objections and adopt the Magistrate Judge's Order holding CJT in contempt.

### 1. The Magistrate Judge Did Not Err in Finding That Judge Garcia Had Issued an Unambiguous Demand.

The Magistrate Judge's Order correctly found that Barrette established that the first *Hyatt* element was met—that is, that there is a court order setting forth an unambiguous command existed. Dkt. 106 at 6. As Barrette stated in its Motion for Contempt, the language of the Court's July 19 Order is clear and unambiguous: (1) produce documents showing CJT's revenues, expenses, and profits in 2019, 2020, 2021, and early 2022; (2) produce documents and other records relating to lost revenue or other damages suffered by CJT; and (3) produce documents relating to CJT's work for Amazon. Dkt. 64 at 3-4. The Court ordered CJT to produce these documents by July 26, 2022, regardless of whether Amazon permitted CJT to do so. Dkt. 64 at 4. There is zero ambiguity in the Court's Order regarding what CJT was supposed to produce and when. Accordingly, there is no dispute the Order contained an unambiguous command.

Dispositively, CJT ignored this element in its objections to the Magistrate Judge's Order. Those objections include no evidence or argument that there was any ambiguity in the Court's order. Where a party fails to develop a legal argument, it is waived and conceded. *See, e.g.*, *Hojnacki v. Klein-Acosta*, 285 F.3d 544, 549 (7th Cir. 2002) ("A party waives any argument that it does not raise before the district court or, if raised in the district court, it fails to develop on

appeal); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver," and "silence leaves us to conclude" a concession). Barrette's evidence shows that the Magistrate Judge did not err in finding that the Court issued an unambiguous demand. CJT, by its failure to argue differently, conceded the first *Hyatt* element is met.

### 2. The Magistrate Judge's Order Did Not Err in Finding That CJT <u>Violated</u> The Court's Unambiguous Command.

The Magistrate Judge made no legal or factual mistake when she found that CJT violated the Court's unambiguous command, Dkt. 106 at 6-8, and CJT's argument to the contrary that it "substantially complied" with the Court's Order is unavailing. Although CJT emphasizes the productions it did eventually and insufficiently make to Barrette, it failed or refused to do so within the timeframe allotted by the Court. This is made all the more obvious by the fact that conspicuously absent in CJY's Objection arguments is *any* timeline of its production. Ignoring the timeframe ordered by the Court for additional production, CJT made its production *months* after the Court's Order. CJT did not miss the deadline by mere days or provide any justification for its failures. Its dilatory actions and months late, still-incomplete production do not constitute substantial compliance with the Court's Order.

The Court's July 19 Order specifically required "CJT to produce any outstanding items **within seven days** [i.e., by July 26] of this Order[.]" Dkt. 64 at 3 (emphasis original). As established by undisputable evidence in Barrette's Motion for Contempt, CJT did not produce *any* records—Amazon's or otherwise—within seven days of the Court's Order. Instead, blatantly disobeying the Order requiring CJT's production *regardless of Amazon's permission to do so*, CJT inexplicably requested more time to obtain Amazon's approval, the same approval the Court had stated was wholly unnecessary and not prerequisite to CJT's court-ordered obligation to meet the

13

EXHIBIT 18

July 26 deadline. Only after Amazon provided its permission did CJT produce documents in response to the Court's Order.

Still, CJT failed to obey the Court's July 19 Order. The documents CJT ultimately produced did not show CJT's revenues, expenses, or profits in 2021 and early 2022 as required. When Barrette filed its Motion for Contempt, CJT had not produced a single document showing how much it had earned, expensed, or profited in 2021 or early 2022. Further, even the documents it produced for 2019 and 2020, were insufficient for Barrette to determine how much CJT earned, expensed, and profited from its work for Barrette in 2019 and 2020 compared to its work for Amazon in that time period.

When Barrette filed its Motion in Contempt, it had received no documents from CJT that showed when CJT applied to work for Amazon, when CJT accepted any offers to work for Amazon, when CJT began performing work for Amazon, how much work CJT has performed for Amazon, and how much CJT has earned, expensed, and profited from its work for Amazon. The fact that CJT has since produced some additional documents does not excuse its repeated refusal to timely comply with an unambiguous Court Order. Rather than error, the Magistrate Judge's finding that the second *Hyatt* element (violating an unambiguous command) was met is supported by a record replete with evidence of CJT's violations.

### 3. The Magistrate Judge Did Not Err in Finding That CJT's Violation Was Significant.

In its Objections, CJT argues that there was no significant violation because it "substantially complied" with the Court's Order. That may be the *opinion* of CJT's counsel, but the *facts* overwhelmingly show not only that CJT failed substantially to comply, but also that CJT's non-compliance was significant.

14

EXHIBIT 18

In this litigation, CJT is seeking the "pro rata remaining value" of the parties' three-year Agreement—or the amount CJT might have earned under the Agreement from the time Barrette allegedly terminated the Agreement (October 2020) until the three-year Agreement would have expired (January 2022). Because CJT's claimed damages must be reduced by the amounts CJT has earned during that period, Barrette appropriately sought to discover information regarding CJT's earnings during that period. In response, CJT alleged it mitigated its damages by performing work for Amazon yet refused to produce *any* documents showing how much it earned and profited from its work for Amazon. CJT's persistent failure to produce highly relevant and clearly discoverable documents impedes Barrette's ability to prove whether CJT has mitigated its damages and, if it has, calculate the amount by which CJT's claimed damages should be reduced.

In CJT's response to Barrette's Motion for Contempt, CJT suggested the documents and information Barrette has been seeking are not relevant to the parties' claims and defenses. *See*, *e.g.*, Dkt. 84 at 10. CJT's suggestion has no legal merit, and was told as much by the Court, which twice considered and rejected CJT's lack-of-relevance argument by ordering CJT to produce documents regarding its damages and its earnings, expenses, and profits in 2019, 2020, 2021, and 2022. Dkt. 53 at 1 (specifically holding documents relating to CJT's damages "discoverable"); Dkt. 64 at 2 ("Under the broad discovery rules articulated above, the information Barrette seeks from Amazon is relevant because it is reasonably calculated to lead to admissible evidence that might establish either an element of Defendant's defenses or Plaintiff's claim.").

It matters not whether CJT believes the documents are relevant. What matters at this stage is that the Court determined that the documents are relevant and are within the liberal scope of discovery, making CJT's continued violation of the Court's Orders contemptible. To the extent CJT is trying to renew this argument, those attempts should be rejected as an untimely and moot

15

EXHIBIT 18

distinction. The issue before the Court is not relevance, but compliance. CJT has not complied—substantially or otherwise—with the Court's Orders. CJT's withholding of these documents precludes the parties, as well as the Court, from assessing the parties' claims and defenses.

CJT's noncompliance constitutes a <u>significant</u> violation. Accordingly, the Magistrate Judge did not err in determining that the third *Hyatt* element was met.

### 4. The Magistrate Judge's Order Did Not Err in Finding That CJT Failed to Make a <u>Reasonable and Diligent Effort</u> to Comply with the Court's Order.

Finally, the Magistrate Judge correctly determined that CJT failed to make a reasonable and diligent effort to comply with the Court's Order. For almost a year Barrette has been seeking the most basic, most relevant documents relating to CJT's damages, including documents pertaining to when CJT applied for other work, any offers that CJT received, any offers that CJT accepted, any agreements that CJT signed, any work that CJT performed, and the amount that CJT earned, expensed and profited from that work.

It defies comprehension that CJT claims it is unable to produce documents showing when it applied for work with Amazon, what offers CJT received from Amazon, what offers CJT accepted from Amazon, what agreements CJT entered into with Amazon, how much work CJT performed for Amazon, and how much CJT earned, expensed, and profited from its work for Amazon. The more likely explanation is that CJT is not unable to do so, but is unwilling. The evidence makes clear that CJT intentionally refused to comply with the Court's Order to avoid a reduction of its claim for hundreds of thousands of dollars. CJT cannot be permitted to sue Barrette for hundreds of thousands of dollars from Barrette, and then refuse to provide basic discovery regarding how much CJT has earned and profited from other work.

During their depositions, CJT's corporate representative, Jett, and Lewis-Jett, admitted they received statements regarding payments from Amazon, these statements were reasonably

16

EXHIBIT 18

accessible to them, and they had provided Amazon documents to counsel showing how much revenue CJT earned from Amazon. Dkt. 73-4 at 6, 73-5 at 5, 73-6 at 5.

CJT's counsel even told Barrette's counsel he had Amazon payment records reflecting the invoice date, period, service area, and *amount*. In addition, Amazon's DSP U.S. Program Policies state Amazon provided DSPs like CJT with weekly invoices. Yet, when ordered to produce documents showing how much CJT earned, expensed, and profited from its Amazon work, CJT failed to produce a single invoice with that data.

It defies law and logic that any business today (regardless of its level of sophistication) that performs services for a large corporation like Amazon could not produce a single document—balance sheet, income statement, statement of cash flow, invoice, tax return, bank statement, or other financial record of any kind—showing how much it was paid.

In CJT's Objections, CJT contended Barrette refused to put CJT in contact with Barrette's Amazon "point-of-contact" to assist CJT in gathering document. Dkt. 114 at 8. Barrette did nothing to interfere or prevent CJT from complying with the Court's Order. Providing a point of contact is not and has never been Barrette's obligation. Indeed, Barrette does not even have a "point-of-contact" at Amazon. CJT works for Amazon, not Barrette, which means that CJT, not Barrette, has Amazong contacts. All Barrette did was serve a non-party subpoena on Amazon, and did so only after CJT refused to produce documents. CJT then lodged vigorous and baseless objections to attempt to prevent Barrette from obtaining the documents directly from Amazon.

CJT relies on the documents it produced *after* the Magistrate Judge's Order finding CJT in contempt to show that it "diligently complied" with the Court's Order. That production was much too little, much too late. CJT's significantly untimely and still deficient production cannot retroactively cure the numerous deficiencies cited in the Magistrate's finding of contempt. And

17

EXHIBIT 18

even this recent production continues to be deficient and does not comply with the Court's order.

For example, in CJT's Objections, CJT claims it produced "complete 2019 - 2021 tax records" for

Jett and Lewis-Jett. Dkt. 114 at 17. Those tax records, however, are so heavily redacted as to render

them useless. In fact, CJT either redacted documents whole cloth, except for a single name or title,

or redacted all dollar amounts on the tax returns. But as a sole proprietor, Jett's income is tied to

the income of CJT, *Baraga Products, Inc. v. Michigan Com'r. of Revenue*, No. 97-1449, 156 F.3d

1228 at *2 (6th Cir. Jul. 23, 1998) ("Income of a sole proprietorship is treated as the income of the

sole proprietor."), and information such as Jett's income, self-employment tax information,

deductions, and expenses relate to CJT's attempts and/or failure to mitigate its damages and falls

within the Court's Order.

    As shown above, the Magistrate Judge did not err in finding that CJT failed to make a

<u>reasonable and diligent effort</u> to comply with the Court's Order, thereby satisfying the final *Hyatt*

element.

**B.**     **This Court should adopt the Magistrate Judge's Order and require CJT to reimburse Barrette's attorneys' fees and costs.**

    Courts have broad discretion to fashion contempt remedies, particularly related to

violations of discovery orders. *See* Fed. R. Civ. P. 37(b)(2) (permitting courts to hold parties in

contempt, to prohibit parties from supporting or opposing claims or defenses, to dismiss claims,

and to enter default judgment); *see also Britt Interactive LLC v. A3 Media LLC*, No. 1:16-cv-

02884-TWP-DML, 2018 WL 1165862, at *3 (S.D. Ind. Mar. 6, 2018) (citing *F.T.C. v. Trudeau*,

579 F.3d 754, 771 (7th Cir. 2009)). The "particular remedy chosen should be 'based on the nature

of the harm and the probable effect of alternative sanctions.'" *Britt Interactive*, 2018 WL 1165862,

at *3 (quoting *Trudeau*, 579 F.3d at 771). Civil contempt sanctions may serve both coercive and

remedial purposes. *Bailey*, 567 F.3d at 933. "Remedial sanctions compensate the moving party for

18

EXHIBIT 18

losses caused by contemptuous conduct, whereas coercive sanctions compel the contemnor into compliance with an existing order." *Bettie Page LLC v. Design Tech. Holding LLC*, No. 1:14-CV-00394-SEB, 2015 WL 1526659, at *8 (S.D. Ind. Apr. 3, 2015) (citing *U.S. v. Dowell*, 257 F.3d 694, 699 (7th Cir. 2001)).

Remedial sanctions impose a fine based on evidence of the moving party's actual loss. *Bettie Page LLC*, 2015 WL 1526659 at *8 (citing *S. Suburban Hous. Ctr.*, 186 F.3d 851, 854 (7th Cir. 1999)). They may be awarded even where there is no need to coerce compliance with the order. *See Britt Interactive*, 2018 WL 1165862 at *4 (affirming award of remedies merely intended to compensate for the contemnor's noncompliance with a temporary restraining order). Remedial sanctions may also include awarding the moving party its reasonable attorneys' fees and costs incurred in connection with the violated order. *See id.* at *6 (awarding attorneys' fees and costs in addition to the compensatory remedial sanctions).

CJT should be required to reimburse the attorneys' fees and costs Barrette incurred in seeking documents regarding CJT's alleged work for Amazon. These fees and costs include attorneys' fees and costs related to serving discovery requests, conducting follow-up discovery, participating in telephonic discovery conferences, taking an agreed-upon Rule 30(b)(6) deposition, and preparing and prosecuting this motion for contempt. *Am. Petroleum Inst.*, 2016 WL 7092841 at *8 (awarding $50,000 to be paid by the contemnor in order to compensate for the damages sustained as a result of the contempt); *see also Panwar v. Access Therapies, Inc.*, No. 1:12-cv-00619, 2014 WL 820023, at *1, *12 (S.D. Ind. Mar. 3, 2014) (awarding $28,431.46 in attorneys' fees and costs against party who failed to produce documents "despite repeated discovery requests, party conferral, and Court intervention").

The Magistrate Judge agreed that the categories of fees and costs that Barrette outlined are compensable. Dkt. 106 at 10. Pursuant to the Magistrate Judge's Order, Barrette timely filed its Detailed and Verified Itemization of Costs and Attorneys' Fees. Dkt. 112.

Reimbursement of those fees and costs is an appropriate sanction in light of CJT's significant violations of the Court's Order and failure to make reasonable and diligent efforts to remedy the outstanding discovery issues. In CJT's Objections, it also failed to address the issue of reimbursement of attorneys' fees and therefore has waived and conceded this point. *See, e.g.*, *Hojnacki*, 285 F.3d at 549 ("A party waives any argument that it does not raise before the district court or, if raised in the district court, it fails to develop on appeal); *Bonte*, 624 F.3d at 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver," and "silence leaves us to conclude" a concession). Accordingly, the Court should adopt the Magistrate Judge's Order and order CJT to reimburse Barrette's attorneys' fees and costs.

## C.      Plaintiff's Request to Seek or Obtain Additional Clarification Should Be Denied.

Lastly, CJT's plea for yet another chance to seek or obtain additional clarification on what outstanding documents it was expected and ordered to produce cannot be, and should not be, taken seriously. Over many months, Barrette specifically, repeatedly, exhaustively has identified and requested the records that it sought in discovery. If CJT needed additional clarification on any of Barrette's requests (which, based on the length of this ongoing discovery dispute seems unlikely, given the multiple times Barrette and/or the court provided such clarification), CJT had ample opportunity before now to seek additional clarification. CJT's implicit request for yet more time to comply with the Court's Order appears to be a delay tactic and yet another attempt to avoid the inevitable finding of contempt, and thus should be denied.

EXHIBIT 18

## <u>CONCLUSION</u>

Barrette has established by clear and convincing evidence that CJT, despite its "best" efforts, violated the Court's order and that its violation was significant. Although CJT ultimately did produce some documents to Barrette, its document productions took place well after the Court-ordered deadline, even months after that deadline. In other words, CJT's actions fail to constitute a reasonable and diligent effort to comply with the Court's Order. For these reasons, Barrette respectfully requests that the Court (1) overrule CJT's objections, (2) adopt the Magistrate Judge's Order, (3) find CJT in contempt for its violations of the Court's Order, (4) order CJT to reimburse Barrette's attorneys' fees and costs in seeking documents regarding CJT's alleged work for Amazon and preparing and prosecuting Barrette's motion for contempt, and (5) for all other just and appropriate relief.

Respectfully submitted,

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

By: <u>*s/ Jan Michelsen*</u>
     Todd J. Kaiser, Atty. No. 10846-49
     Jan Michelsen, Atty. No. 18078-49
     Kevin Roberts, Atty. No. 33822-49
     300 N. Meridian Street, Suite 2700
     Indianapolis, IN  46204
     Telephone:  317.916.1300
     Facsimile:  317.916.9076
     todd.kaiser@ogletree.com
     jan.michelsen@ogletreedeakins.com
     kevin.roberts@ogletree.com

     *Counsel for Defendant*

EXHIBIT 18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 6, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Benjamin C. Ellis
bellis@hkm.com

*s/ Jan Michelsen*
Jan Michelsen

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
300 N. Meridian Street, Suite 2700
Indianapolis, IN  46204
Telephone:  317.916.1300
Facsimile:  317.916.9076

54843115.v12-OGLETREE