IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CLIFTON JETT TRANSPORT, INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:21-cv-01064-JPH-MKK |
| | ) | |
| BARRETTE OUTDOOR LIVING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S DETAILED AND VERIFIED ITEMIZATION OF COSTS AND ATTORNEYS' FEES

After an eleven-month long discovery dispute with Plaintiff, Clifton Jett Transport, Inc. ("CJT"), which included two discovery conferences with Judge Garcia and two discovery orders from Judge Garcia, Defendant, Barrette Outdoor Living, Inc. ("Barrette"), filed a Motion to Hold Plaintiff in Contempt ("Barrette's Contempt Motion") for violating Judge Garcia's orders. Dkt. 72.

On July 12, 2023, the Court issued its Order on Cross Motions for Sanctions (the "Court's Order"), granting Barrette's Contempt Motion, finding CJT and CJT's counsel in contempt and deserving of sanctions,[1] and determining "that **an award of attorney's fees and costs to Barrette** for the reasonable fees and expenses associated with litigating its motion for contempt, Dkt. 72, responding to CJT's objection, Dkt. 114, and defending against CJT's motion for contempt, Dkt. 127,

---

[1] The Court found CJT and CJT's counsel, Mr. Ellis, jointly and severally liable for the attorney's fees and costs. For purposes of the instant filing, Barrette will refer to CJT and CJT's counsel collectively as "CJT."

EXHIBIT 22

through final resolution of the fee award is appropriate and proportionate." Dkt. 155(emphasis original). The Court directed the parties to confer to resolve the award of fees and expenses and further provided that, should the parties be unable to reach an agreement, Barrette would be permitted to file an updated fee petition.

Barrette now seeks the very award to which the Court already determined it is entitled. During the parties' required conference regarding the fee award, CJT sought to substantially limit the amount of fees and costs it must pay Barrette by focusing exclusively on the phrase "associated with litigating its motion for contempt."[2] In other words, CJT believes *no* work done or costs incurred prior to Barrette's filing of its Contempt Motion is compensable. This position inexplicably ignores the message of the Court's Order. Notably, the Court cautioned CJT that it had considered the ultimate sanction against it—dismissing its claims against Barrette with prejudice—and further cautioned CJT that, should CJT further disregard Court orders, the Court would follow through with immediate dismissal of CJT's claims with prejudice. In light of these warnings, the Court's language ordering a fee award must be read and interpreted in the broadest sense possible.

CJT's approach to the fee award also unnecessarily limits the meaning of the word "associated." *The Cambridge Dictionary*, Cambridge University Press & Assessment 2023, defines the term "associated" as "connected." https://dictionary.cambridge.org/us/dictionary/english/associated (last visited Aug.

---

[2] It is worth noting that, although CJT objected broadly to Barrette's demand for its fee award, CJT never made specific objections to any line item for which Barrette is requesting reimbursement despite the fact that Barrette provided copies of its bills.

EXHIBIT 22

23, 2023). *Merriam Webster*, Merriam-Webster, Incorporation 2023, similarly defines "associated" as "related, connected, or combined together." https://www.merriam-webster.com/dictionary/associated (last visited August 23, 2023). These definitions establish that the phrase "associated with," as used in the Court's order, means anything connected to or related to litigating Barrette's Contempt Motion. There is no chicken or egg question here. CJT's conduct during discovery—which the Court found "was not the result of simple inadvertence, carelessness, or mistake," Dkt. 155—directly led to Barrette's Contempt Motion. Had CJT been forthcoming during discovery or had CJT complied with the Court's discovery orders, Barrette would not have had to pursue the information and documents that it needed through multiple approaches and over the course of nearly a year. There can be no question, then, that Barrette's fee award must encompass attorney's fees and costs for the significant, time-consuming, and expensive work it was forced to do in the face of CJT's inaction and noncompliance. This work and these costs are indisputably "associated with" litigating Barrette's Contempt Motion.

The Court's Order itself demonstrates that its use of the word "associated" should be interpreted broadly, citing at length the facts and procedural history that resulted in Barrette's Contempt Motion when determining that sanctions against CJT were warranted. Specifically, the Court stated:

- "The Court is at a loss to understand why counsel (1) tried to access the Amazon invoices only *after* the Court imposed deadline for producing the Amazon documents had passed; and (2) did not at least produce screenshots of the Amazon invoices themselves. *Id.* at 16 (emphasis original).

EXHIBIT 22

- "Whether Mr. Ellis specifically knew that Mr. Jett had access to the Amazon invoices is beside the point. The critical fact is that Mr. Ellis did nothing further to comply with the July Order between the date it was issued and the August 9 production deadline." *Id.* at 17.

- "The point is that choosing to simply ignore what was required by the July Order was not a valid option. The failure to comply with the July Order was therefore objectively unreasonable." *Id.* at 18.

- "[T]he conduct of CJT and Mr. Ellis was objectively unreasonable and in flagrant disregard of the Court's Orders[.]" *Id.* at 20.

For all of these reasons, Barrette now respectfully submits its Detailed and Verified Itemization of Costs and Attorneys' Fees and requests the Court order CJT to reimburse Barrette for $182,856.40 in attorneys' fees and costs Barrette has incurred and likely will incur in litigating its motion for contempt, responding to CJT's objection, and defending against CJT's motion for contempt through the final resolution of the fee award.

## RELEVANT **PROCEDURAL HISTORY**

On or about March 22, 2021, CJT sued Barrette for breach of contract, alleging Barrette breached the parties' Agreement, CJT has "lost revenue and suffered other damages as a result of [Barrette's] breach of the Agreement," and "Paragraph 9 of the Agreement says if [Barrette] terminates the Agreement without cause, [Barrette] has to pay CJT the pro rata remaining value of the term of the Agreement." Dkt. 1-3 at ¶¶ 17, 19–23. On September 9, 2021, Barrette served written discovery on CJT to determine CJT's alleged damages. In its response to this written discovery, CJT stated it had "performed work for Amazon beginning in November 2020." Dkt. 73-1 at 11.

EXHIBIT 22

On August 23, 2022, after eleven months of diligently attempting to obtain information and documents regarding CJT's work for Amazon, which included conducting follow-up discovery, participating in telephonic discovery conferences, taking an agreed-upon Rule 30(b)(6) deposition, serving nonparty discovery requests, preparing and presenting arguments before the Court, and attempting to obtain compliance with the Court's orders, Barrette moved to hold CJT in contempt and requested the Court enter an order holding CJT and its counsel in contempt, dismissing CJT's claims against Barrette with prejudice, and requiring CJT and its counsel to pay Barrette's attorneys' fees and costs in seeking documents regarding CJT's alleged work for Amazon and preparing and prosecuting its contempt motion. Dkt. 72 at 1.

In support of its Contempt Motion, Barrette submitted exhibits and its 17-page memorandum, which detailed Barrette's persistent yet unsuccessful attempts to obtain information and documents regarding CJT's work for Amazon and its revenues, expenses, and profits. As noted above, this work included multiple discovery deficiency letters, multiple discovery conferences, an agreed-upon Rule 30(b)(6) deposition, two telephonic discovery conferences with the Court, and two Orders from the Court. *See* Dkt. 74 at 1–9. On September 6, 2022, CJT filed its 26-page response opposing Barrette's contempt motion, Dkt. 84 at 1–26, and submitted 27 exhibits in support of its response, Dkt. 85 at 1. A few days later, on September 11, 2022, CJT moved the Court for an evidentiary hearing on Barrette's contempt motion. Dkt. 87 at 1–2. On September 13, 2022, Barrette filed its 16-page reply in

EXHIBIT 22

support of its contempt motion, Dkt. 90 at 1–16, and on September 26, 2022, Barrette filed its 5-page response opposing CJT's motion for an evidentiary hearing, Dkt. 91 at 15.

On December 7, 2022, the Magistrate Judge issued an Order,[3] granting in part and denying in part Barrette's Contempt Motion. Dkt. 106. The Magistrate Judge held CJT in contempt, stated Barrette's "attorneys' fees and costs related to serving discovery requests, conducting follow-up discovery, participating in telephonic discovery conferences, taking an agreed-upon Rule 30(b)(6) deposition, and preparing and prosecuting [its] motion for contempt" were "compensable," Dkt. 106 at 10, and ordered Barrette to submit "a detailed calculation of reasonable costs and attorney fees incurred," Dkt. 106 at 10.

Following this Report and Recommendation, on January 6, 2023, Barrette filed a 17-page Detailed and Verified Itemization of Costs and Attorneys' Fees and seven supporting exhibits. Dkt. 112. On January 9, 2023, the Court construed the Magistrate Judge's Order as a report and recommendation and provided the parties an opportunity to file written objections to it. Dkt. 113. The Court stayed further briefing on Barrette's motions for costs and fees. Dkt. 113. On January 23, 2023, CJT filed its 18-page objection to the Magistrate Judge's Report and Recommendation. Dkt. 114. On February 6, 2023, Barrette filed its 22-page response in opposition to

---

[3] The Court later construed this Order as a Report and Recommendation, Dkt. 113, and then later, because it had the benefit of additional argument of counsel and a more fully developed evidentiary record, rejected it, thereby allowing the Court to review de novo both parties' motions for contempt. Dkt. 155.

EXHIBIT 22

CJT's objections. Dkt. 120. On February 13, 2023, CJT filed its 7-page reply in support of its objections. Dkt. 122.

Relevant motions practice continued when, on March 15, 2023, CJT filed its own motion for contempt against Barrette along with a 25-page brief in support thereof. Dkt. 127, Dkt. 128. On April 12, 2023, Barrette filed its 29-page response in opposition to CJT's motion. Dkt. 137. On April 19, 2023, CJT filed its 7-page reply in support of its motion. Dkt. 138.

On May 16, 2023, the Court set a hearing to address Barrette's Contempt Motion, CJT's objection to the Magistrate Judge's Report and Recommendation, and CJT's motion for contempt. Dkt. 144. The Court further ordered the parties to meet and confer in person about the issues raised in their filings for a minimum of one hour. Dkt. 144. On May 22, 2023, the parties complied with the Court's order and met in person for slightly more than one hour. On June 7, 2023, an approximately two-hour evidentiary hearing took place on the parties' motions.

On July 12, 2023, the Court issued the Court's Order, finding CJT must pay Barrette's fees and costs and that CJT and CJT's counsel are jointly and severally liable for the award. Dkt. 155. The Court provided that the parties would have through August 1, 2023, to confer to resolve the fees and expenses and, in the event that resolution was not possible, Barrette would have through August 8, 2023, to file an updated fee petition. Dkt. 155.

Barrette promptly analyzed its bills for its fee award and on July 25, 2023, at 3:38 p.m., counsel for Barrette emailed counsel for CJT its demand for its fee award,

EXHIBIT 22

attached to the email a 116-page document that included relevant bills and two spreadsheets that documented relevant time worked but not yet invoiced, and stated clearly that this demand was a starting point for negotiations. *See* Exhibit 1. That same day, at 4:06 p.m. (*not even a full thirty minutes after Barrette sent its initial demand*), counsel for CJT rejected Barrette's demand, asserting that Barrette's demand exceeded the scope of Barrette's fee award. *Id*. CJT did not object to any specific items in Barrette's bills nor did CJT make a counter-demand. *See id*.

The next day, on July 26, 2023, counsel for Barrette offered to discuss Barrette's position with counsel for CJT. *Id*. While counsel for CJT offered to make himself available for a telephone conference, he also informed counsel for Barrette that he had taken it upon himself to unilaterally contact the Magistrate Judge's chambers in anticipation that the parties would not be able to resolve this matter before the August 1, 2023, deadline. *Id*.

On July 28, 2023, the parties had a brief conference regarding the fee award during which counsel for CJT proposed that the parties mediate the fee award and, in light of possible resolution, suggested that the parties stay Barrette's then-pending deadline for its reply brief in support of its cross motion for summary judgment.[4] Barrette, cautiously optimistic but also eager to resolve this long-drawn out litigation, readily agreed to CJT's counsel's proposal. Accordingly, that same day, counsel for CJT again contacted the Magistrate Judge, stating that counsel had agreed that a

---

[4] Because the parties' cross motions for summary judgment do not relate to Barrette's Contempt Motion, Barrette is not seeking reimbursement for the time and expense it has invested in its cross motion for summary judgment and has intentionally omitted the parties' summary judgment briefing from this procedural history.

EXHIBIT 22

settlement conference would benefit the parties' attempt to resolve this issue. *See* Exhibit 2. On August 9, 2023, the parties participated in a settlement conference but were unable to resolve their dispute over the fee award. Dkt. 166. In accordance with the Court's Order, Barrette now files the instant Detailed and Verified Itemization of Costs and Attorneys' Fees.

## ITEMIZATION OF COSTS AND ATTORNEYS' FEES

The standard used for computing reasonable attorneys' fees is well established. "Reasonable attorney's fees are equal to a reasonable rate multiplied by the number of hours reasonably expended . . . ." *Grady v. Affiliated Computer Servs.*, No. 1:13-cv-00342-TWP-MJD, 2014 WL 6066049, at *2 (S.D. Ind. Nov. 13, 2014). The prevailing attorney is presumptively entitled to the rate that attorney charged, regardless of whether the attorney charges a rate above or below the market average, although here, Barrette's counsel charges Barrette below the market average. *See Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993). The district court has wide discretion when determining whether the time an attorney spends on a motion is reasonable. *See Gautreaux v. Chi. Hous. Auth.*, 491 F.3d 649, 659 (7th Cir. 2007). The moving party bears the burden of demonstrating its fees are reasonable. *Id.*

Additionally, courts in this circuit (and others) have "rejected the notion that a prevailing party may only recover attorney fees directly related to making the motion . . . ." *See Rackemann v. LISNR, Inc.*, No. 1:17-cv-00624-MJD-TWP, 2018 WL 3328140, at *5 (S.D. Ind. July 6, 2018). Instead, a party is entitled to recover all fees associated with tasks that "are made necessary by the opposing party's failure to

provide the requested discovery." *Id.* at *6. This includes: (1) fees incurred researching, drafting, revising, and filing motions, as well as time spent replying to opposing counsel's response, *see Uszak v. Yellow Transp., Inc.*, No. 1:06-cv-00837, 2007 WL 2085403, at *8 (N.D. Ohio July 13, 2007), *aff'd in part, rev'd in part on other grounds*, 343 F. App'x 102 (6th Cir. 2009); (2) fees for meeting and conferring with opposing counsel regarding discovery disputes, *Rackemann*, 2018 WL 3328140, at *6; and (3) fees for drafting a motion for attorneys' fees and attending Court conferences related to the motion, *Phillips v. Vasil Mgmt. Co.*, No. 1:10-cv-610-WTL-TAB, 2012 WL 177406, at *2 (S.D. Ind. Jan. 20, 2012).

Under the standard outlined above, Barrette submits the following detailed and verified calculation of costs and attorneys' fees associated with litigating the contempt motions:

a. Barrette was forced to take action in the face of CJT's inaction to discover what the Court ultimately referred to as "critical evidence in this case," Dkt. 155, and CJT's inaction led directly to Barrette's Contempt Motion. Had CJT been forthcoming with the sought-after information, Barrette would not have had to file its Contempt Motion. The Magistrate Judge found this work compensable. Dkt. 106.

Accordingly, Barrette is seeking reimbursement for costs and attorneys' fees incurred in November 2021, December 2021, and January 2022 for conducting follow-up discovery[5] related to CJT's work for Amazon and its revenues, expenses, and profits in advance of the parties' depositions, which included emailing CJT's counsel, analyzing CJT's discovery responses for deficiencies,

---

[5] Barrette does not request fees related to serving its initial discovery on CJT.

drafting discovery deficiency letters, and participating in telephonic discovery conferences with CJT's counsel[6]:

$4,393.80

b.  Similar to above, Barrette was forced to take action in the face of CJT's inaction to discover what the Court ultimately referred to as "critical evidence in this case," Dkt. 155, and CJT's inaction led directly to Barrette's Contempt Motion. Had CJT been forthcoming with the sought-after information, Barrette would not have had to file its Contempt Motion. The Magistrate Judge found this work compensable. Dkt. 106.

Accordingly, Barrette is seeking reimbursement for costs and attorneys' fees incurred in February 2022 and March 2022 for conducting yet more follow-up discovery related to CJT's work for Amazon and its revenues, expenses, and profits in advance of the parties' depositions, taking an agreed-upon Rule 30(b)(6) deposition, and conducting follow-up discovery after the parties' depositions related to CJT's work for Amazon and its revenues, expenses, and profits, which included identifying documents to collect during the deposition, drafting the deposition topics and document requests, participating in telephonic discovery conferences with CJT's counsel, revising the deposition topics and documents requests,[7] emailing CJT's counsel, preparing for and participating in a discovery conference with CJT's counsel, and analyzing deposition transcripts to identify outstanding documents to collect from CJT:

$5,968.80

c.  Because CJT was not forthcoming with the sought-after information and documents, Barrette was forced to discover this essential information by other time-

---

[6] Barrette does not request costs or fees related to analyzing two bankers boxes of invoices produced by CJT—none of which related to CJT's revenues, expenses, or profits related to its work for Amazon— which amounted to incurred fees of $8,457.30. Exhibit 3 ¶ 22 n.2 & Attachment A at 15–19. None of this time would have been necessary had CJT simply produced the information and documents regarding CJT's work for Amazon.

[7] Barrette does not request costs or fees related to preparing for the depositions of CJT, Clifton Jett, or Gwennetta Lewis-Jett or taking the depositions, which amount to fees and costs of $29,110.18. Exhibit 3 ¶ 22 n.3 & Attachment A at 19–25.

consuming and expensive means while also participating in discovery conferences with the Court. The Magistrate Judge found this work compensable. Dkt. 106.

Accordingly, Barrette is seeking reimbursement for costs and attorneys' fees incurred in April 2022 and May 2022 for serving a nonparty subpoena on Amazon, attempting to resolve the parties' discovery dispute prior to the parties' first discovery conference with Judge Garcia, participating in the first discovery conference with Judge Garcia, and attempting to resolve the parties' discovery dispute after the first conference, which included emailing CJT's counsel, drafting a discovery deficiency letter to CJT's counsel, identifying alternative methods to obtain documents regarding CJT's work for Amazon, drafting and serving a nonparty subpoena to Amazon, analyzing and responding to CJT's objections to Barrette's subpoena to Amazon, analyzing and responding to Amazon's objections to Barrette's subpoena to Amazon, preparing for and participating in discovery conferences with CJT's counsel and Amazon's counsel, analyzing case law regarding CJT's refusal to produce documents regarding CJT's work for Amazon, drafting a synopsis of the parties' dispute for Judge Garcia, preparing for and participating in a discovery conference with Judge Garcia, and emailing CJT's counsel to obtain compliance with Judge Garcia's first discovery conference order:

$9,360.90

d.  Similar to above, because CJT was not forthcoming with the sought-after information and documents, Barrette was forced to discover this essential information by other time-consuming and expensive means while also participating in discovery conferences with the Court. The Magistrate Judge found this work compensable. Dkt. 106.

Accordingly, Barrette is seeking reimbursement for costs and attorneys' fees incurred in June 2022 and July 2022 in continuing to attempt to resolve the parties' dispute, participating in a second discovery conference with Judge Garcia, and attempting to resolve the parties' dispute after the second discovery conference, which included emailing CJT's counsel, preparing for and participating in

12

EXHIBIT 22

telephonic discovery conferences with CJT's counsel, emailing Amazon's counsel, drafting a discovery deficiency letter to CJT's counsel, moving to extend the parties' case-management deadlines, drafting a second synopsis of the parties' dispute for Judge Garcia, preparing for and participating in a second discovery conference with Judge Garcia, emailing Amazon's counsel, analyzing and responding to CJT's motion to extend its time to produce documents, and responding to Amazon's request for a duplicative, attorneys' eyes only protective order:

$9,085.95

e.   Had CJT been forthcoming with the sought-after information, Barrette would not have had to file its Contempt Motion. Because CJT was not forthcoming with the sought-after information and documents, Barrette was forced to discover this essential information by other time-consuming and expensive means while also participating in discovery conferences with the Court. Further, work done to prepare and prosecute Barrette's Contempt Motion is indisputably within the scope of the fee award. *See* Dkt. 106, 155.

Accordingly, Barrette is seeking reimbursement for costs and attorneys' fees incurred in August 2022, September 2022, and October 2022 in preparing and prosecuting Barrette's contempt motion and continuing to attempt to resolve the parties' dispute, which included analyzing CJT's noncompliant document production, analyzing's CJT's reply in support of its motion to extend time to produce documents, emailing Amazon's counsel, participating in discovery conferences with CJT's and Amazon's counsel regarding failures to produce documents relating to CJT's work for Amazon and CJT's revenues, expenses, and profits, outlining, drafting, and revising Barrette's contempt motion, drafting another synopsis of the parties' dispute for Judge Garcia, preparing for and participating in a third discovery conference with Judge Garcia, analyzing Amazon's supplemental document production, analyzing CJT's response to Barrette's contempt motion, drafting and revising Barrette's reply in support of its contempt motion, drafting a discovery-deficiency email to Amazon's counsel, analyzing CJT's motion for an evidentiary hearing relating to Barrette's

13

EXHIBIT 22

contempt motion, drafting a response to CJT's motion for an evidentiary hearing, noticing continued depositions of CJT, Clifton Jett, and Gwennetta Lewis-Jett based on Amazon's supplemental document production, moving to extend the parties' case-management deadlines, and preparing for a discovery conference with Judge Pryor regarding Amazon's failure to produce records relating to CJT's work for Amazon:

$33,260.40

f.   Barrette is also seeking reimbursement for costs and attorneys' fees incurred in November 2022 in continuing to attempt to resolve the parties' dispute and preparing for and participating in discovery conferences with Judge Pryor, which included preparing for and participating in a discovery conference with Judge Pryor, analyzing CJT's deficient supplemental tax records and identifying missing records relating to CJT's revenues, expenses, and profits, emailing CJT's counsel regarding CJT's deficient supplemental tax records, analyzing Amazon's supplemental document production, drafting Barrette's position regarding the discovery dispute with Amazon for Judge Pryor, analyzing Amazon's position regarding the discovery dispute, preparing for and participating in another discovery conference with Judge Pryor:

$6,162.30

g.   Barrette is also seeking reimbursement for costs and attorneys' fees incurred in December 2022 and January 2023 in continuing to attempt to resolve the parties' dispute and preparing Barrette's detailed and verified itemization of costs and attorneys' fees, which included emailing Amazon's counsel regarding its supplemental document production, analyzing Judge Pryor's order granting in part Barrette's contempt motion and denying CJT's evidentiary hearing motion, analyzing Amazon's supplemental document production, emailing CJT's counsel regarding CJT's failure to comply with court orders and the continued depositions of CJT, Jett, and Lewis-Jett, analyzing, reducing, and redacting 11 months of Barrette's legal bills to prepare Barrette's detailed and verified itemization of costs and attorneys' fees, and drafting

14

EXHIBIT 22

Barrette's detailed and verified itemization of costs and attorneys' fees.

$28,452.15

h.    Barrette is also seeking reimbursement for costs and attorneys' fees incurred in February 2023 and March 2023 in continuing to attempt to resolve the parties' dispute and preparing Barrette's Response in Opposition to CJT's Objections to Magistrate Judge's Report and Recommendation, analyzing CJT's Reply in Support of its Objections to Magistrate Judge's Report and Recommendation, analyzing CJT's Motion for Contempt, emailing CJT's counsel regarding CJT's failure to comply with court orders, analyzing unredacted portions of production of tax returns from CJT, analyzing public records relating to CJT's indictment for tax fraud and witness tampering, preparing narratives regarding Barrette's retention and discovery efforts to prepare Clint McGee for his 30(b)(6) corporate representative depositions, analyzing document production from CJT to date to determine whether complete production requested has been received, conducting in-camera review of unredacted tax returns, emails with CJT's counsel regarding depositions and Barrette's inspection of CJT's tax returns and preparing for and taking the continued depositions of CJT, Jett, and Lewis-Jett:

$30,992.10

i.    Barrette is also seeking reimbursement for costs and attorneys' fees incurred in April 2023, May 2023 and June 2023 in continuing to attempt to resolve the parties' dispute and preparing Barrette's Response to CJT's Motion for Contempt, analyzing CJT's reply in support of its Motion for Contempt, analyzing court order setting a hearing on the parties' contempt motions and ordering the parties to conduct an in-person meet and confer, preparing witnesses for, preparing for and participating in mandatory in-person meet and confer, preparing for the parties' hearing on cross motions for contempt by emailing Judge Hanlon's chambers regarding use of witnesses at the contempt hearing, preparing for hearing on parties' cross-motions for contempt by preparing for the examination of

witnesses and exhibits, attending hearing on parties' cross-motions for contempt:

$24,905.70

j.   Barrette is seeking reimbursement for costs and attorneys' fees incurred in July 2023 and August 2023 in continuing to attempt to resolve the parties' dispute and analyzing the Court's order on cross-motions for sanctions, analyzing a year and a half of legal bills to determine compensable attorneys' fees, analysis regarding amount of fee award including reviewing previous filing regarding same, preparing Barrette's amended detailed and verified itemization of costs and attorneys' fees, emailing CJT's counsel regarding fee award:

$9,207.90

k.   Barrette is also seeking reimbursement for costs and attorneys' fees incurred in August 2023 in continuing to attempt to resolve the parties' dispute including: preparing for and attending the settlement conference, continued review of detailed time and costs records to prepare detailed itemization of costs, and continued revision of Barrette's Detailed and Verified Itemization of Costs and Attorneys' Fees. The firm's August time has not yet been billed but the request is based on contemporaneous time records:

$11,066.40 (estimate)

l.   Work done to resolve the fee award is indisputably within the scope of the fee award. *See* Dkt. 155.

Accordingly, Barrette is seeking reimbursement for costs and attorneys' fees anticipated through resolution of the fee award, including for its anticipated reply in support of its Detailed and Verified Itemization of Costs and Attorneys' Fees and any appeal of Barrette's fee award[8]:

$10,000 (estimate)

---

[8] Barrette has not included in its estimate the cost of an appeal but anticipates that, should CJT appeal Barrette's fee award, such appeal would cost Barrette upwards of $40,000.

Total Costs and Attorneys' Fees Incurred or Likely to Be Incurred:     $182,856.40

Exhibit 3, Declaration of Todd J. Kaiser.

Barrette's total costs and attorneys' fees incurred to date associated with litigating the motion for contempt do not include two significant activities: (1) Barrette's counsel's multi-attorney analysis of thousands of invoices produced by CJT—none of which provided any information related to CJT's work for Amazon or its revenues, expenses, or profits related to that work; and (2) Barrette's counsel's preparation for and taking of the depositions of CJT, Jett, and Lewis-Jett. These two items resulted in Barrette incurring costs and attorneys' fees of $8,457.30 and $29,110.18, respectively. Exhibit 3 ¶ 22 & Attachment A at 15–25.

Barrette's total costs and attorneys' fees incurred to date that are "associated with litigating its motion for contempt, Dkt. 72, responding to CJT's objection, Dkt. 114, and defending against CJT's motion for contempt, Dkt. 127, through final resolution of the fee award" are $161,790.00 in fees billed. There are $11,066.40 in unbilled fees and costs for August 2023. It is estimated that an additional $10,000 in attorneys' fees will be billed while preparing a reply to CJT's anticipated objection to Barrette's Detailed and Verified Itemization of Costs and Attorneys' Fees. The total amount of fees and costs requested is $182,856.40.

This amount is reasonable because it is based on the actual amount of attorneys' fees Barrette incurred over a span of nearly nineteen months because of CJT's refusal to provide sufficient information or documents regarding its work for Amazon and its revenues, expenses, and profits—even after two Court orders

required production of the information and documents—as well as Barrette's anticipated attorneys' fees and costs to be incurred. *See Annie Oakley Enters. Inc. v. Amazon.com, Inc.*, 1:19-cv-01732-JMS-MJD, 2021 WL 3039035, at *1, *7–8 (S.D. Ind. Mar. 29, 2021) (recommending plaintiff and its counsel who failed to produce revenue information due to "the manner in which Plaintiffs operated their business" be barred from "seeking actual damages of any kind th[e] case" and required to reimburse defendants' attorneys' fees and costs), *report and recommendation adopted*, 2021 WL 2373779, at *1, *18 (S.D. Ind. June 10, 2021) (affirming award of $86,448.50 in attorneys' fees to defendants and requiring the fees to be paid by plaintiff's counsel); *Panwar v. Access Therapies, Inc.*, No. 1:12-cv-00619, 2014 WL 820023, at *1, *12 (S.D. Ind. Mar. 3, 2014) (awarding $28,431.46 in attorneys' fees and costs against party who failed to produce documents "despite repeated discovery requests, party conferral, and Court intervention").

In its Order on Barrette's Contempt Motion, the Magistrate Judge specifically stated Barrette's "attorneys' fees and costs related to serving discovery requests, conducting follow-up discovery, participating in telephonic discovery conferences, taking an agreed-upon Rule 30(b)(6) deposition, and preparing and prosecuting [its] motion for contempt" were "compensable." Dkt. 106 at 10. In the Court's Order, the Court determined that Barrette was entitled to "**an award attorneys' fees and costs to Barrette** for the reasonable fees and expenses associated with litigating its motion for contempt, Dkt. 72, responding to CJT's objection, Dkt. 114, and defending

18

EXHIBIT 22

against CJT's motion for contempt, Dkt. 127, through final resolution of the fee award." Dkt. 155 (emphasis original.)

The specific bases for Barrette's request are detailed in Exhibit 3, Declaration of Todd J. Kaiser, including Attachment A to the Declaration, which contains redacted and reduced copies of Barrette's legal bills in this action. Barrette has redacted and/or reduced entries that do not relate to Barrette's attempts to obtain information and documents regarding CJT's work for Amazon.

Granting Barrette's request for fees and costs will not only compensate Barrette for the fees and costs it has incurred in attempting to obtain documents and information regarding CJT's work for Amazon but also, hopefully, incentivize CJT to comply with the Court's Orders and any future orders. *See, e.g.*, *Britt Interactive LLC v. A3 Media LLC*, No. 1:16-cv-02884-TWP-DML, 2018 WL 1165862, at *1, *3 (S.D. Ind. Mar. 5, 2018) (adopting magistrate judge's report and recommendation granting parties' contempt motion, holding the moving party was entitled to recover its fees, and reasoning "[c]ontempt is a unique civil sanction because its aim is both coercive and compensatory") (internal quotation marks and citation omitted); *People for the Ethical Treatment of Animals, Inc. v. Wildlife in Need and Wildlife in Deed, Inc.*, No. 4:17-cv-00186-RLY-DML, 2019 WL 2028719, at *1, *4 (S.D. Ind. Mar. 27, 2019) (granting party's contempt motion, awarding moving party's attorneys' fees, and reasoning "[c]ivil contempt remedies (as opposed to criminal contempt remedies) coerce compliance").

## CONCLUSION

For each and all of the foregoing reasons, Defendant respectfully requests that the Court order CJT to reimburse Barrette in the amount of $182,856.40 for the total costs and attorneys' fees it has incurred as a result of CJT's failure to produce information and documents relating to CJT's work for Amazon and CJT's revenues, expenses, and profits, and all other appropriate relief.

Respectfully submitted,

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

By: */s/ Todd J. Kaiser*
Todd J. Kaiser, Atty. No. 10846-49
Jan Michelsen, Atty. No. 18078-49
Kevin E. Roberts, Atty. No. 33822-49
Ellen Pactor, Atty. No. 34145-49
300 N. Meridian St., Ste. 2700
Indianapolis, Indiana 46204
Telephone: (317) 916-1300
Facsimile: (317) 916-9076
todd.kaiser@ogletree.com
jan.michelsen@ogletree.com
kevin.roberts@ogletree.com
ellen.pactor@ogletree.com

*Attorneys for Defendant*

20

EXHIBIT 22

## **VERIFICATION**

    I, Todd J. Kaiser, declare that I have read Defendant's Detailed and Verified Itemization of Costs and Attorneys' Fees; that I know the contents thereof; that I have reviewed the relevant business records; and that the statements in Defendant's Detailed and Verified Itemization of Costs and Attorneys' Fees are true and correct.

                                         */s/ Todd J. Kaiser*

EXHIBIT 22

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Benjamin C. Ellis
Natalie Dickey
HKM Employment Attorneys LLP
320 N. Meridian St., Suite 615
Indianapolis, IN 46204
bellis@khm.com
ndickey@hkm.com


/s/ Todd J. Kaiser

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204
Telephone: 317.916.1300
Facsimile: 317.916.9076

58031014.v1-OGLETREE