IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CLIFTON JETT TRANSPORT, INC., | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:21-cv-01064-JPH-MKK |
| | ) |
| BARRETTE OUTDOOR LIVING, INC., | ) |
| | ) |
| Defendant. | ) |

## DECLARATION OF TODD J. KAISER

I, Todd J. Kaiser, hereby affirm the truth of the following:

1.  I am an adult of legal age and sound mind.

2.  The matters detailed herein are made upon personal knowledge. I would testify consistent with this Declaration if called to testify in this matter.

3.  I am a shareholder of the law firm of Ogletree, Deakins, Nash, Smoak & Stewart, P.C. ("Ogletree"), in Indianapolis, Indiana.

4.  I have managed and overseen the representation of Defendant, Barrette Outdoor Living, Inc. ("Barrette"), in this matter.

5.  I make this Declaration in connection with Barrette's Detailed and Verified Itemization of Costs and Attorneys' Fees.

6.  I have personal knowledge of the attorneys' fees and costs Barrette incurred pursuing information and documents from Plaintiff, Clifton Jett Transport, Inc. ("CJT"), relating to CJT's work for Amazon and its revenues, expenses, and profits in 2019, 2020, 2021, 2022, and 2023 and associated with litigating the

1

EXHIBIT 24

contempt motions. Those records are kept in the ordinary course of the regularly conducted business activities of Ogletree, and it is the regular practice of the firm to keep such records. Ogletree routinely relies on such records in the ordinary course of its business activities.

7.      I am admitted to practice law in the state and federal courts of Indiana. I have practiced law since 1986, after graduating from Indiana University School of Law.

8.      Since 2000, I have been a shareholder at Ogletree, an international law firm which represents employers in a wide range of litigation, among other matters. I have significant litigation experience, including experience representing companies in lawsuits alleging claims for breach of contract, like those raised in this lawsuit.

9.      In light of our firm's relationship with Barrette, Barrette and Ogletree have negotiated hourly rates for Ogletree attorneys and paralegals for time spent working on Barrette litigation matters, including this lawsuit.  The hourly rates detailed herein are lower than the usual and customary rates charged by Ogletree attorneys and paralegals in other, similar matters.

10.      On this matter, my hourly rate was $486 in 2021, $508.50 in 2022, and $535.50 in 2023.  My time was billed in six-minute increments.

11.      The large majority of the work on this matter was handled by Kevin Roberts, an associate attorney at Ogletree. Mr. Roberts is admitted to practice law in the state and federal courts in Indiana as well as the state and federal courts in Kentucky.  Mr. Roberts has practiced law since October 2015, after graduating from

EXHIBIT 24

Indiana University Maurer School of Law. He has significant litigation experience, including experience in business-litigation matters like this lawsuit. Mr. Roberts is highly efficient in these types of cases and I work with him often as a result.

12.     On this matter, Mr. Roberts's hourly rate was $351.00 in 2021, $373.50 in 2022, and $400.50 in 2023, billed in six-minute increments. In my opinion, these rates are very reasonable given Kevin's experience and efficiency in handling this type of litigation.

13.     Mr. Roberts and I were assisted throughout this matter by other Indiana-licensed associate attorneys with lower hourly rates, including Jacy Rush, Jordan Heck, Phillip Jones, and Ellen Pactor. Ms. Rush, Mr. Heck, and Mr. Jones all graduated from Indiana University Maurer School of Law and have been practicing law in Indiana since 2018, 2019, and 2021, respectively. Ms. Pactor graduated from Indiana University Robert H. McKinney School of Law and has been practicing law in Indiana since 2016. Mr. Roberts and I also were assisted by paralegals Melissa Couch and Kelli Jachimiak. The hourly rates charged by these legal professionals in this matter are detailed in the attached invoices.

14.     The hourly rates charged by Ogletree's attorneys and paralegals are based on the experience, education, and training of our professionals. I am aware of the fees charged by attorneys and legal professionals with similar experience in the Indianapolis, Indiana area, and it is my professional opinion that Ogletree's standard rates are in accordance with (and frequently lower than) the rates charged by other

legal professionals in the community with similar experience, education, and training.

15.    Ogletree's standard rates are regularly paid by our clients in similar litigation matters, and they have been paid by our client here.

16.    This case is notable in that the ratio of work performed at the associate level was significantly higher than the typical case. This was due to Mr. Robert's expertise and efficiency in handling this type of litigation. Almost 90 percent of the hourly legal work in this matter was completed at the associate or paralegal level, which helped to minimize the amount of fees charged to Barrette.

17.    In particular, Mr. Roberts handled the large majority of the substantive legal work in this matter including all depositions. Mr. Roberts delegated work to junior associates, paralegals, and litigation support staff as appropriate, while I provided revisions, oversight, and strategic input throughout the case.

18.    I have reviewed our firm's legal bills to Barrette relating to this matter. A true and accurate copy of Barrette's redacted and reduced legal fees and costs is attached to this Declaration as Attachment A.

19.    Ogletree has invoiced or will invoice Barrette the amounts indicated for each of the time entries. Ogletree has redacted and reduced those portions of the time records that are not related to litigating the motion for contempt, responding to CJT's objection and defending against CJT's motion for contempt. Ogletree also has redacted those portions of the time records that reflect the substance of privileged communications with Barrette.

20.     I am aware that CJT is taking the position that the Court's order (Dkt. 155) limits Barrett's claim for fees to just the motion for contempt and nothing that transpired before that. Barrett disagrees with the restrictive language. If CJT had simply produced the information and documents regarding CJT's work for Amazon, then there would have been no need to file a motion for contempt. The time and effort incurred in obtaining the information and documents regarding CJT's work for Amazon is very much "associated with litigating its motion for contempt."

21.     The work performed by our law firm associated with litigating the contempt motions was significant and includes (but is not limited to) the following:

    a.     Barrette was forced to take action in the face of CJT's inaction to discover what the Court ultimately referred to as "critical evidence in this case," Dkt. 155, and CJT's inaction led directly to Barrette's Contempt Motion. Had CJT been forthcoming with the sought-after information, Barrette would not have had to file its Contempt Motion. The Magistrate Judge found this work compensable. Dkt. 106.

      Accordingly, Barrette is seeking reimbursement for costs and attorneys' fees incurred in November 2021, December 2021, and January 2022 for conducting follow-up discovery[1] related to CJT's work for Amazon and its revenues, expenses, and profits in advance of the parties' depositions, which included emailing CJT's counsel, analyzing CJT's discovery responses for deficiencies, drafting discovery deficiency letters, and participating in telephonic discovery conferences with CJT's counsel[2]:

---

[1] Barrette does not request fees related to serving its initial discovery on CJT.

[2] Barrette does not request costs or fees related to analyzing two bankers boxes of invoices produced by CJT—none of which related to CJT's revenues, expenses, or profits related to its work for Amazon—which amounted to incurred fees of $8,457.30. Exhibit 3 ¶ 20 n.2 & Attachment A at 15–19. None of this time would have been necessary had CJT simply produced the information and documents regarding CJT's work for Amazon.

$4,393.80

b. Similar to above, Barrette was forced to take action in the face of CJT's inaction to discover what the Court ultimately referred to as "critical evidence in this case," Dkt. 155, and CJT's inaction led directly to Barrette's Contempt Motion. Had CJT been forthcoming with the sought-after information, Barrette would not have had to file its Contempt Motion. The Magistrate Judge found this work compensable. Dkt. 106.

Accordingly, Barrette is seeking reimbursement for costs and attorneys' fees incurred in February 2022 and March 2022 for conducting yet more follow-up discovery related to CJT's work for Amazon and its revenues, expenses, and profits in advance of the parties' depositions, taking an agreed-upon Rule 30(b)(6) deposition, and conducting follow-up discovery after the parties' depositions related to CJT's work for Amazon and its revenues, expenses, and profits, which included identifying documents to collect during the deposition, drafting the deposition topics and document requests, participating in telephonic discovery conferences with CJT's counsel, revising the deposition topics and documents requests,[3] emailing CJT's counsel, preparing for and participating in a discovery conference with CJT's counsel, and analyzing deposition transcripts to identify outstanding documents to collect from CJT:

$5,968.80

c. Because CJT was not forthcoming with the sought-after information and documents, Barrette was forced to discover this essential information by other time-consuming and expensive means while also participating in discovery conferences with the Court. The Magistrate Judge found this work compensable. Dkt. 106.

Accordingly, Barrette is seeking reimbursement for costs and attorneys' fees incurred in April 2022 and May 2022 for serving a nonparty subpoena on Amazon, attempting to resolve the parties' discovery dispute prior to the parties'

---

[3] Barrette does not request costs or fees related to preparing for the depositions of CJT, Clifton Jett, or Gwennetta Lewis-Jett or taking the depositions, which amount to fees and costs of $29,110.18. Exhibit 1 ¶ 20 n.3 & Attachment A at 19–25.

first discovery conference with Judge Garcia, participating in the first discovery conference with Judge Garcia, and attempting to resolve the parties' discovery dispute after the first conference, which included emailing CJT's counsel, drafting a discovery deficiency letter to CJT's counsel, identifying alternative methods to obtain documents regarding CJT's work for Amazon, drafting and serving a nonparty subpoena to Amazon, analyzing and responding to CJT's objections to Barrette's subpoena to Amazon, analyzing and responding to Amazon's objections to Barrette's subpoena to Amazon, preparing for and participating in discovery conferences with CJT's counsel and Amazon's counsel, analyzing case law regarding CJT's refusal to produce documents regarding CJT's work for Amazon, drafting a synopsis of the parties' dispute for Judge Garcia, preparing for and participating in a discovery conference with Judge Garcia, and emailing CJT's counsel to obtain compliance with Judge Garcia's first discovery conference order:

$9,360.90

d.  Similar to above, because CJT was not forthcoming with the sought-after information and documents, Barrette was forced to discover this essential information by other time-consuming and expensive means while also participating in discovery conferences with the Court. The Magistrate Judge found this work compensable. Dkt. 106.

Accordingly, Barrette is seeking reimbursement for costs and attorneys' fees incurred in June 2022 and July 2022 in continuing to attempt to resolve the parties' dispute, participating in a second discovery conference with Judge Garcia, and attempting to resolve the parties' dispute after the second discovery conference, which included emailing CJT's counsel, preparing for and participating in telephonic discovery conferences with CJT's counsel, emailing Amazon's counsel, drafting a discovery deficiency letter to CJT's counsel, moving to extend the parties' case-management deadlines, drafting a second synopsis of the parties' dispute for Judge Garcia, preparing for and participating in a second discovery conference with Judge Garcia, emailing Amazon's counsel, analyzing and responding to CJT's motion to extend its time to produce

EXHIBIT 24

documents, and responding to Amazon's request for a duplicative, attorneys' eyes only protective order:

$9,085.95

e. Had CJT been forthcoming with the sought-after information, Barrette would not have had to file its Contempt Motion. Because CJT was not forthcoming with the sought-after information and documents, Barrette was forced to discover this essential information by other time-consuming and expensive means while also participating in discovery conferences with the Court. Further, work done to prepare and prosecute Barrette's Contempt Motion is indisputably within the scope of the fee award. *See* Dkt. 106, 155.

Accordingly, Barrette is seeking reimbursement for costs and attorneys' fees incurred in August 2022, September 2022, and October 2022 in preparing and prosecuting Barrette's contempt motion and continuing to attempt to resolve the parties' dispute, which included analyzing CJT's noncompliant document production, analyzing's CJT's reply in support of its motion to extend time to produce documents, emailing Amazon's counsel, participating in discovery conferences with CJT's and Amazon's counsel regarding failures to produce documents relating to CJT's work for Amazon and CJT's revenues, expenses, and profits, outlining, drafting, and revising Barrette's contempt motion, drafting another synopsis of the parties' dispute for Judge Garcia, preparing for and participating in a third discovery conference with Judge Garcia, analyzing Amazon's supplemental document production, analyzing CJT's response to Barrette's contempt motion, drafting and revising Barrette's reply in support of its contempt motion, drafting a discovery-deficiency email to Amazon's counsel, analyzing CJT's motion for an evidentiary hearing relating to Barrette's contempt motion, drafting a response to CJT's motion for an evidentiary hearing, noticing continued depositions of CJT, Clifton Jett, and Gwennetta Lewis-Jett based on Amazon's supplemental document production, moving to extend the parties' case-management deadlines, and preparing for a discovery conference with Judge Pryor regarding Amazon's failure to produce records relating to CJT's work for Amazon:

$33,260.40

EXHIBIT 24

f.  Barrette is also seeking reimbursement for costs and attorneys' fees incurred in November 2022 in continuing to attempt to resolve the parties' dispute and preparing for and participating in discovery conferences with Judge Pryor, which included preparing for and participating in a discovery conference with Judge Pryor, analyzing CJT's deficient supplemental tax records and identifying missing records relating to CJT's revenues, expenses, and profits, emailing CJT's counsel regarding CJT's deficient supplemental tax records, analyzing Amazon's supplemental document production, drafting Barrette's position regarding the discovery dispute with Amazon for Judge Pryor, analyzing Amazon's position regarding the discovery dispute, preparing for and participating in another discovery conference with Judge Pryor:

$6,162.30

g.  Barrette is also seeking reimbursement for costs and attorneys' fees incurred in December 2022 and January 2023 in continuing to attempt to resolve the parties' dispute and preparing Barrette's detailed and verified itemization of costs and attorneys' fees, which included emailing Amazon's counsel regarding its supplemental document production, analyzing Judge Pryor's order granting in part Barrette's contempt motion and denying CJT's evidentiary hearing motion, analyzing Amazon's supplemental document production, emailing CJT's counsel regarding CJT's failure to comply with court orders and the continued depositions of CJT, Jett, and Lewis-Jett, analyzing, reducing, and redacting 11 months of Barrette's legal bills to prepare Barrette's detailed and verified itemization of costs and attorneys' fees, and drafting Barrette's detailed and verified itemization of costs and attorneys' fees.

$28,452.15

h.  Barrette is also seeking reimbursement for costs and attorneys' fees incurred in February 2023 and March 2023 in continuing to attempt to resolve the parties' dispute and preparing Barrette's Response in Opposition to CJT's Objections to Magistrate Judge's Report and

EXHIBIT 24

Recommendation, analyzing CJT's Reply in Support of its Objections to Magistrate Judge's Report and Recommendation, analyzing CJT's Motion for Contempt, emailing CJT's counsel regarding CJT's failure to comply with court orders, analyzing unredacted portions of production of tax returns from CJT, analyzing public records relating to CJT's indictment for tax fraud and witness tampering, preparing narratives regarding Barrette's retention and discovery efforts to prepare Clint McGee for his 30(b)(6) corporate representative depositions, analyzing document production from CJT to date to determine whether complete production requested has been received, conducting in-camera review of unredacted tax returns, emails with CJT's counsel regarding depositions and Barrette's inspection of CJT's tax returns and preparing for and taking the continued depositions of CJT, Jett, and Lewis-Jett:

$30,992.10

i.  Barrette is also seeking reimbursement for costs and attorneys' fees incurred in April 2023, May 2023 and June 2023 in continuing to attempt to resolve the parties' dispute and preparing Barrette's Response to CJT's Motion for Contempt, analyzing CJT's reply in support of its Motion for Contempt, analyzing court order setting a hearing on the parties' contempt motions and ordering the parties to conduct an in-person meet and confer, preparing witnesses for, preparing for and participating in mandatory in-person meet and confer, preparing for the parties' hearing on cross motions for contempt by emailing Judge Hanlon's chambers regarding use of witnesses at the contempt hearing, preparing for hearing on parties' cross-motions for contempt by preparing for the examination of witnesses and exhibits, attending hearing on parties' cross-motions for contempt:

$24,905.70

j.  Barrette is seeking reimbursement for costs and attorneys' fees incurred in July 2023 in continuing to attempt to resolve the parties' dispute and analyzing the Court's order on cross-motions for sanctions, analyzing a year and a half of legal bills to determine compensable attorneys' fees,

10

EXHIBIT 24

analysis regarding amount of fee award including reviewing previous filing regarding same, preparing Barrette's amended detailed and verified itemization of costs and attorneys' fees, emailing CJT's counsel regarding fee award:

$9,207.90

k. Barrette is seeking reimbursement for costs and attorneys' fees incurred in August 2023 in continuing to attempt to resolve the parties' dispute including: preparing for and attending the settlement conference, continued review of detailed time and costs records to prepare detailed itemization of costs, and continued revision of Barrette's Detailed and Verified Itemization of Costs and Attorneys' Fees. The firm's August time has not yet been billed but the request is based on contemporaneous time records:

$11,066.40 (estimate)

l. Barrette is also seeking reimbursement for costs and attorneys' fees anticipated through resolution of the fee award, including for its anticipated reply in support of its Detailed and Verified Itemization of Costs and Attorneys' Fees:

$10,000.00 (estimate)

Total Costs and Attorneys' Fees Incurred or Likely to Be Incurred:     $182,856.40

See Attachment A for itemized fees and expenses.

22.     The firm, at this time, is not seeking fees and costs for defending against an appeal. However, should CJT appeal the award, I estimate defending against the appeal will cost an additional $35,000-$40,000. Given the uncertainty of an appeal, Barrette is not seeking appellate fees at this time, but it reserves its' right to do so if an appeal is filed.

23.     All of the fees associated with the above tasks could have been avoided, but were ultimately incurred due to CJT's litigation tactics and maneuvering.

24.     Barrette's total costs and attorneys' fees incurred to date associated with litigating the motions for contempt do not include two significant activities:  (1) the multi-attorney analysis of thousands of invoices produced by CJT—none of which provided any information related to CJT's work for Amazon or its revenues, expenses, or profits related to that work; and (2) the preparation for and taking of the depositions of CJT, Jett, and Lewis-Jett. These two items resulted in Barrette incurring costs and attorneys' fees of $8,457.30 and $29,110.18, respectively. Attachment A at 15–25.

25.     Barrette's total costs and attorneys' fees incurred to date that are "associated with litigating its motion for contempt, Dkt. 72, responding to CJT's objection, Dkt. 114, and defending against CJT's motion for contempt, Dkt. 127, through final resolution of the fee award...", are $161,790.000 in fees billed. There are $11,066.40 in unbilled fees and costs for August. It is estimated that an additional $10,000 in attorneys' fees will be billed in preparing a reply in support of the fees and costs. The total amount of fees and costs requested is $182,856.40. This amount is reasonable because it is based on the actual amount of attorneys' fees Barrette incurred over a span of nearly 19 months because of CJT's refusal to provide sufficient information or documents regarding its work for Amazon and its revenues, expenses, and profits—even after two Court orders requiring production of the information and documents—as well as Barrette's anticipated attorneys' fees and costs to be incurred.

EXHIBIT 24

26.   Based on my decades of experience litigating cases like this and in overseeing attorneys throughout my career, it is my opinion Barrette incurred or will incur necessary, warranted, and reasonable legal costs and fees in the amount of $182,856.40 associated with litigating its motion for contempt, responding to CJT's objection and defending against CJT's motion for contempt in 2019, 2020, 2021, 2022, and 2023.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

_____
Todd J. Kaiser

August 25, 2023_____
Date

13

EXHIBIT 24